In the Matter of John W. BRINSFIELD, d/b/a South East Sales Company, Inc. and Atlas Products Company, Debtor.

FARMERS AND MERCHANTS BANK OF EATONTON, GEORGIA, Plaintiff,

v.

John W. BRINSFIELD d/b/a South East Sales Company, Inc., Atlas Products Company and J. Coleman Tidwell, Trustee, Defendants.

Bankruptcy No. 85–50573.
Adv. No. 85–5048.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Aug. 28, 1987.

Randy E. Connell, Glover & Davis, P.A., Newnan, Ga., for plaintiff.

Richard M. Katz, Brown, Katz, Flatau & Hasty, Macon, Ga., for defendant.

J. Coleman Tidwell, Macon, Ga., Trustee.

MEMORANDUM OPINION ON COMPLAINT OBJECTING TO DISCHARGE AND TO DETERMINE DISCHARGEABILITY OF DEBT

ROBERT F. HERSHNER, Jr., Chief Judge.

### STATEMENT OF THE CASE

On April 24, 1985, John W. Brinsfield, d/b/a South East Sales Company, Inc. and Atlas Products Company, Defendant, filed a petition for relief under Chapter 7 of the Bankruptcy Code. On June 29, 1985, Farmers and Merchants Bank of Eatonton, Georgia, Plaintiff, filed a complaint against Defendant and J. Coleman Tidwell, Trustee,[1] objecting to Defendant's discharge[2] and seeking to determine the dischargeability of the debt owed Plaintiff.[3] Plaintiff alleges that Defendant had converted and embezzled certain payments received from

---

1. Plaintiff filed a voluntary dismissal of its complaint against J. Coleman Tidwell on April 18, 1986.

2. 11 U.S.C.A. § 727 (West 1979 & Supp. 1987).

3. 11 U.S.C.A. § 523 (West 1979 & Supp. 1987).

accounts receivable in which Plaintiff held a security interest.

The complaint came on for trial on April 18, 1986. The Court, having considered the evidence presented and the briefs of counsel, now publishes its findings of fact and conclusions of law.

## FINDINGS OF FACT

Defendant was the president and sole shareholder of South East Sales Company, Inc. (South East).[4] South East was incorporated in 1952 and operated continuously until April of 1985. During this period, South East was engaged in the business of institutional and governmental sales of cleaning and maintenance supplies.

Since 1978, South East had obtained financing from Plaintiff. Under the normal loan procedure, Defendant would present invoices to Plaintiff, who would then loan South East seventy-five percent of the face value of the invoices. The loans were secured by notes which were signed by Defendant as a corporate officer. The notes granted Plaintiff a security interest in South East's equipment, inventory, supplies, proceeds of sales, and accounts receivable. Although some of the notes listed specific invoices as collateral, most of the notes simply granted Plaintiff an interest in all accounts receivable. Under the loan agreement, South East was to maintain inventory worth $30,000 at all times. On September 6, 1979, Plaintiff filed a UCC financing statement which listed the following as collateral: "all equipment, products, and supplies or proceeds of sale of same as outlined and particularly described in all Invoices of Southeast Sales, Inc., Eatonton, Georgia, and by attachment of and reference to are made part of the security agreements."

The loans were granted on a sixty-day basis at an interest rate of forty-seven percent.[5] Upon repayment of the loans, South East was entitled to receive twenty-five percent of the face value of the invoices, less any finance charges. Defendant had the option to apply the twenty-five percent to other outstanding loans of South East. The loan agreement provided for a rebate of interest, finance charges, and insurance premiums on any notes that were repaid early.

This adversary proceeding concerns five loans made during the fall of 1983. The following is a summary of the five loans:

| NOTE NUMBER | DATE DUE | AMOUNT FINANCED |
|---|---|---|
| #33600 | 11/13/83 | $2,256.79 |
| #33713 | 11/29/83 | $7,494.43 |
| #33723 | 12/18/83 | $1,303.93 |
| #33772 | 12/31/83 | $6,820.53 |
| #33879 | 01/15/84 | $7,522.65 |

Each of the loans was evidenced by a note signed by Defendant as a corporate officer and guaranteed by Defendant individually. Each of the loans was to be repaid within sixty days and was secured by all accounts receivable. The notes also listed specific invoices as security.[6]

Plaintiff and Defendant had arranged a specific collection procedure for the invoice accounts listed on each of the five notes. Under the arrangement, the account obligors were to make payments by checks made payable jointly to Plaintiff and South East. The checks were to be mailed directly to South East. The account obligors were notified of this procedure through a letter drafted by Plaintiff and signed by Defendant in his corporate capacity.[7] De-

---

**4.** Defendant also controlled a proprietorship known as Atlas Products Company. Defendant's actions with respect to Atlas Products Company are not at issue in the case at bar.

**5.** According to the testimony of Mr. Lane, a loan officer for Plaintiff, the interest rate was computed at prime plus three, plus three discount points. Plaintiff converted the interest to a flat annual percentage rate to avoid the necessity of charging South East discount points. Plaintiff set the high interest rate because it considered South East a high risk borrower and

because the high rate would encourage timely repayment of the loans.

**6.** Each note also contained a dragnet clause.

**7.** The letter contained the following language: In the interest of extending credit to my better customers, I have made a loan with the Farmers & Merchants Bank of Eatonton, Georgia, and do hereby assign, convey, and pledge all interest in your accounts due South East Sales Company, Inc., to the Farmers & Merchants Bank of Eatonton, Georgia.

fendant would take the checks to Plaintiff, where Defendant would endorse each check for South East. Mr. Lane, a loan officer for Plaintiff, would endorse as an officer of the bank. The checks were immediately deposited in a special checking account maintained in the name of South East.[8] Defendant testified that the paid invoices were listed on the deposit slips. Defendant would then write a check to Plaintiff on this account for the amount paid on the invoices.

Mr. Lane testified that Plaintiff required the specific collection procedure because of an incident in 1981 during which Defendant had been "out of trust."[9] Defendant had received payment of certain invoices, but had failed to remit these payments to Plaintiff. Upon learning of the conversion, Plaintiff had demanded immediate repayment of the loan secured by the invoices. Defendant was able to repay this loan by securing an additional loan from Plaintiff.[10] Mr. Lane testified that Defendant was warned at that time not to convert any accounts receivable for business or personal use.

In early 1984, Plaintiff became aware that the five loans at issue in the present case were overdue. Mr. Lane testified that he questioned Defendant regarding the invoice accounts securing these loans and was told by Defendant that all of the accounts were "okay." Upon further investigation, Plaintiff learned that the account obligors had sent checks to Defendant that

> Effective at once, please make all checks payable to the Farmers & Merchants Bank and South East Sales Company, Inc. Please remit payment to South East Sales Company, Inc.,
> . . .

8. This account was used solely for the repayment of the debts owed by South East to Plaintiff.

9. "Out of trust" is a term used when specifically assigned accounts are being used in a manner inconsistent with the agreement between the parties. Defendant was out of trust in 1981 because he had failed to remit to the bank payments received on invoices that were specifically listed on the security agreement.

10. The additional loan was subsequently repaid by a cosigner.

designated South East as the only payee and that Defendant had failed to remit these payments to Plaintiff.[11] Defendant testified that he had endorsed these checks and used the funds for general business expenses of South East.

In December of 1984, South East began to operate from a checking account at Peoples Bank.[12] This account was held in the name of John Brinsfield. Defendant had no other personal account. Defendant admitted that he paid some personal expenses from the account at Peoples Bank but denied that corporate funds had been used to make these payments.[13]

South East had suffered financial trouble beginning in 1982. Defendant testified that he had to contribute personal funds to help finance the corporation. No corporate records were kept which reflect that South East had received loans from Defendant, nor did South East ever sign a note evidencing such an indebtedness. The only records of Defendant's loans were deposit slips written by Defendant and entries made by Defendant on the corporate books. Defendant testified that, although he drew money from the account at Peoples Bank to pay personal expenses, the total amount of his personal contributions to South East exceeded the total amount of money he drew from the corporation to meet his personal expenses. The following is a summary of Defendant's capital contributions and draws for 1983, 1984, and 1985:

11. Plaintiff did not begin to investigate the delinquent payments until April or May of 1984. Defendant failed to remit payments during 1983, 1984, and 1985.

12. Defendant testified that this account was used by South East beginning in December of 1984 because the Internal Revenue Service had levied on the corporation's account maintained at Plaintiff bank.

13. Defendant testified that he paid life insurance premiums and alimony obligations from the account at Peoples Bank. Defendant received personal income from social security and his employment at Vining Funeral Home. This income was deposited in the account at Peoples Bank.

| YEAR | AMOUNT CONTRIBUTED | AMOUNT DRAWN |
|------|--------------------|--------------|
| 1983 | $2,138.20 | $2,401.12 |
| 1984 | $3,518.11 | $1,432.61 |
| 1985 | $3,008.15 | $1,829.54 |

Plaintiff contends that the following amounts remain owing on the notes:

| NOTE NUMBER | AMOUNT OUTSTANDING |
|-------------|--------------------|
| #33600 | $ 970.44 |
| #33713 | $ 4,057.55 |
| #33723 | $ 1,303.93 |
| #33772 | $ 6,820.53 |
| #33879 | $ 7,025.31 |
| Total = | $20,177.76 |

Plaintiff further contends that Defendant converted invoice payments totalling $25,-617.47. Although Defendant admits that a substantial amount remains outstanding on the notes, he disagrees with Plaintiff's contentions as to the outstanding balance.[14] Defendant contends that Plaintiff failed to credit South East with interest rebates for early repayments of other loans. Defendant contends that the amount of these rebates should be set off against the amount owing on the notes, thus reducing Defendant's overall obligation to Plaintiff.

## CONCLUSIONS OF LAW

■ Plaintiff has asked the Court to deny a discharge to Defendant under section 727[15] of the Bankruptcy Code or, alternatively, to find the debt nondischargeable under section 523.[16] The Court notes that each of these sections applies to "individual" debtors. The Bankruptcy Code does not define the term individual, however, in a Chapter 7 case, a corporation is not entitled to a discharge and is not subject to dischargeability actions. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 384, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6340. *See also Rogers v. Funk/Hansard, Inc. (In re Funk/Hansard, Inc.)*, Ch. 7 Case No. 82–51003–Mac, Adv. No: 82–5387 (Bankr.M. D.Ga. July 27, 1984) Available on WEST-LAW, FBKR–CS database; *Forestry Prod-*

*ucts, Inc. v. Hope*, 34 B.R. 753, 9 Collier Bankr.Cas.2d 1276 (M.D.Ga.1983). The issue before the Court, therefore, is whether Mr. Brinsfield as an individual should be denied a discharge or should have his debt determined to be nondischargeable.

Plaintiff's complaint seeks a denial of discharge under section 727(a)(2) and (5). Under section 727, the Plaintiff bears the burden of proving his objection. R.Bankr. P. 4005. The evidence at trial was not specifically directed toward section 727. The briefs filed by counsel for each side have failed to address the section 727 issue. Considering the failure of Plaintiff to pursue actively its objection under section 727, the Court finds that Plaintiff has not carried its burden of proof. It is apparent to the Court that section 727 is not a true issue in this adversary proceeding. The Court, therefore, will direct its opinion to the issue of nondischargeability under section 523, since this issue appears to be the actual area of controversy.

Plaintiff contends that Defendant's debt is nondischargeable under section 523(a)(4).[17] Subsection (a)(4) provides:

> (a) A discharge under section 727, 1141[,] 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual from any debt—
>
> . . . .
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . .

11 U.S.C.A. § 523(a)(4) (West 1979 & Supp. 1987). When a creditor seeks to have a debt determined to be nondischargeable, the creditor bears the burden of proving each element of the section by clear and convincing evidence. *Schweig v. Hunter (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986); *Seepes v. Schwartz (In re Schwartz)*, 45 B.R. 354, 357 (S.D.N.Y. 1985); *Security Title & Guaranty Co. v.*

---

**14.** Defendant does not dispute Plaintiff's allegation of the amount converted.

**15.** 11 U.S.C.A. § 727 (West 1979 & Supp.1987).

**16.** 11 U.S.C.A. § 523 (West 1979 & Supp.1987).

**17.** 11 U.S.C.A. § 523(a)(4) (West 1979 & Supp. 1987).

Campbell (*In re Campbell*), 79 B.R. 496, 499 (Bankr.M.D.Fla.1986).

■ Before the Court can find a debt nondischargeable for fraud or defalcation under subsection (a)(4), the Court must find that Defendant was acting in a fiduciary capacity. *Gay v. Holland* (*In re Holland*), 78 B.R. 358, 363 (Bankr.M. D.Ga.1987); *First National Bank of Commerce v. Dove* (*In re Dove*), 78 B.R. 630, 636 (Bankr. M.D.Ga.1986). Within the meaning of section 523(a)(4), a fiduciary relationship is a relationship based upon a technical or express trust. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *Barclays American/Business Credit Inc. v. Long* (*In re Long*), 774 F.2d 875 (8th Cir.1985); *Greyhound Lines, Inc. v. Young* (*In re Young*), Case No. 76–408–Mac (Bankr.M.D.Ga. Oct. 31, 1977). The fiduciary relationship required by the Code is not one implied by contract or by the factual situation of the parties and the law, nor does it encompass ordinary commercial relationships such as debtor-creditor and principal- agent. *Mullis v. Walker* (*In re Walker*), 7 B.R. 563, 564, 7 Bankr.Ct.Dec. 68, 69 (Bankr.M.D.Ga.1980); *In re Funk/Hansard* at 17; *Everwed Co. v. Ayers* (*In re Ayers*), 25 B.R. 762, 774 (Bankr. M.D.Tenn.1982).

■ Plaintiff asserts that Defendant, as president and sole shareholder of South East, owed a fiduciary duty to Plaintiff because of its status as a creditor of South East. Although a corporate officer owes a fiduciary duty to his corporation, this Court has ruled previously that the officer's fiduciary duty is not generally extended to creditors of the corporation for purposes of section 523(a)(4). *In re Dove* at 14–15; *In re Funk/Hansard* at 15. The Court finds that Defendant did not assume a fiduciary duty toward Plaintiff by signing the notes in his capacity as president of South East. The Court further finds that Defendant's signature as a guarantor is not sufficient to impose a fiduciary duty upon Defendant.

■ Since it has been determined that Defendant's relationship with Plaintiff was not fiduciary in nature, the Court need not decide whether the elements of fraud or defalcation are present. The Court must now address Plaintiff's contention that Defendant committed an act of embezzlement. An act of embezzlement will render a debt nondischargeable regardless of whether Defendant was acting in a fiduciary capacity. Embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." 3 *Collier on Bankruptcy* ¶ 523.14[3] (15th ed. 1987). *See In re Holland* at 12; *In re Walker*, 7 B.R. at 564–65, 7 Bankr.Ct.Dec. at 69.

Under the law of Georgia, a plaintiff seeking to prove embezzlement must establish that the property was converted to the defendant's own use.[18] Defendant testified that all of the funds from the converted invoice payments were used for the business expenses of South East. These expenses included employee wages, corporate debts, new inventory purchases, and other expenses incurred through normal business operations. Defendant received personal income from social security and his employment at Vining Funeral Home. This income was deposited in the account at Peoples Bank. Defendant paid both personal and corporate expenses from this account. The Court notes that Defendant maintained

---

18. O.C.G.A. § 16–8–4 (1984). Under Georgia law, theft by conversion is the equivalent of conversion. Section 16–8–4 provides:

(a) A person commits the offense of theft by conversion when, having lawfully obtained funds or other property of another under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation. This Code section applies whether the application or disposition is to be made from the funds or property of another or from the accused's own funds or property in equivalent amount when the agreement contemplates that the accused may deal with the funds or property of another as his own. O.C.G.A. § 16–8–4 (1984).

a record of both corporate and personal transactions from this account. The Court is persuaded that this record reflects an honest accounting of both personal and corporate expenditures. From the evidence presented, the Court is unable to determine whether any of the funds from the converted invoice payments were used to pay the personal expenses of Defendant.

Before Defendant's debt can be found nondischargeable for embezzlement, Plaintiff also must establish that Defendant acted with fraudulent intent. *In re Walker,* 7 B.R. at 565, 7 Bankr.Ct.Dec. at 69 (citing *Moore v. United States,* 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895)). An intent to defraud is defined as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." *Black's Law Dictionary* 381 (5th ed. 1979). Defendant testified that his only reason for using the invoice payments was to attempt to maintain the corporation as a going concern. The Court finds that Defendant did mislead Plaintiff when he told Plaintiff that the invoice accounts were "okay." The Court is not persuaded, however, that Defendant used this deception for the purpose of inducing Plaintiff to alter its rights in the invoice accounts. The Court notes that Plaintiff was entitled to receive interest on the notes and that Plaintiff retained the right to foreclose on the collateral if South East defaulted on the notes.[19]

The Court concludes that Plaintiff has failed to establish by clear and convincing evidence that Defendant acted with fraudulent intent. Plaintiff also failed to establish that Defendant used the invoice proceeds for his own personal use. Thus, Plaintiff has failed to carry its burden of proof under section 523(a)(4).[20]

Plaintiff's final contention is that the debt is nondischargeable under section 523(a)(6).[21] Subsection (a)(6) prohibits the discharge of any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C.A. § 523(a)(6) (West 1979 & Supp. 1987). A debt arising from a technical conversion is not sufficient to meet the willful and malicious standard of subsection (a)(6); the debtor must have a conscious intent to violate the property rights of another. *In re Funk/Hansard* at 21; *Pioneer Bank & Trust Co. v. Scotella (In re Scotella),* 18 B.R. 975, 977, 8 Bankr.Ct. Dec. 1282, 1283 (Bankr.N.D.Ill.1982); *Grand Piano & Furniture Co. v. Hodges (In re Hodges),* 4 B.R. 513, 516, 6 Bankr. Ct.Dec. 531, 533, 2 Collier Bankr.Cas.2d 566, 570 (Bankr.W.D.Va.1980). Under subsection (a)(6), Plaintiff must show that Defendant intentionally converted Plaintiff's property, that the conversion caused harm to Plaintiff, and that Defendant had no justification or excuse for his actions. 3 *Collier on Bankruptcy* ¶ 523.16[1] (15th ed. 1987). Plaintiff must prove these elements by clear and convincing evidence. *In re Hunter* at 1579.

Although corporate officers are not generally held personally liable for the debts of a corporation, they may be held liable to the extent that their participation in the commission of a tortious act results in harm to a third party. *Citronelle-Mobile Gathering v. O'Leary,* 499 F.Supp. 871 (S.D.Ala.1980); *Bombadier Corp. v. Penning (In re Penning),* 22 B.R. 616, 9 Bankr.Ct.Dec. 723 (Bankr.E.D.Mich.1982). In *Ford Motor Credit Co. v. Owens,*[22] the Eleventh Circuit Court of Appeals concluded that a corporate debt was nondischargeable under section 523(a)(6) in the personal bankruptcy of a corporate officer when the

---

**19.** Plaintiff did foreclose on South East's property in early April of 1985.

**20.** Under section 523(a)(4), a debt incurred through larceny is also nondischargeable. Since larceny was not raised at trial as a ground for nondischargeability, the Court need not address this issue. The Court notes, however, that larceny requires that the original taking of the

property be unlawful. The evidence presented does not support a finding that Defendant obtained the invoice payments unlawfully.

**21.** 11 U.S.C.A. § 523(a)(6) (West 1979 & Supp. 1987).

**22.** 807 F.2d 1556 (11th Cir.1987).

officer actively participated in the conversion of property which was subject to the security interest of a third party. 807 F.2d at 1559.

In *Owens*, debtor was the president, director, and majority stockholder of a corporate car dealership. The dealership sold certain vehicles out of trust. At trial, it was established that debtor had personally guaranteed the obligations of the business, that he had sold vehicles without remitting the proceeds to the creditor, and that he had transferred corporate funds to another dealership without recording any evidence of the transfer. *Id.* at 1557. The court of appeals concluded that the dealership was guilty of willful and malicious conversion since it had no good faith reason for the disposal of the proceeds from the sale of the vehicles. The court further concluded that the debt was nondischargeable in the officer's individual bankruptcy based upon his active participation in the conversion. *Id.* at 1559–60. Under the *Owens* rationale, before a corporate debt can be found nondischargeable under section 523(a)(6) in the individual bankruptcy of a corporate officer, a court must determine that the initial conversion of the property was both willful and malicious and that the corporation had no good faith reason for the conversion.

 The term "willful" means deliberate or intentional. H.R.Rep. No. 595, 95th Cong., 1st Sess. 365 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6321; S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865. Congress, in drafting section 523(a)(6), specifically rejected the reckless disregard standard propounded by the Supreme Court in *Tinker v. Colwell*,[23] thus only an intentional act will satisfy the "willful" element. Defendant testified that he knew that he was obligated to give the invoice payments to Plaintiff, but that he intentionally and knowingly did not give the payments to Plaintiff. The Court concludes that Defendant acted willfully. The Court must now determine whether Defendant acted with malice.

 Malice is defined as the "intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under circumstances that the law will imply an evil intent." *Black's Law Dictionary* 862 (5th ed. 1979). The element of malice is separate and distinct from the element of willfulness in section 523(a)(6). The court in *In re Hodges* explained this distinction as follows:

> [T]he requisite element of maliciousness is not proved by a showing of mere negligence.... The Debtor ... did not testify that he accidentally sold his stereo equipment; he did so deliberately....
>
> But that explains only half the problem. Code Section 523(a)(6) reads in the conjunctive, not the disjunctive: "willful and malicious." While [the Debtor] may well have willfully sold the secured property, he did not appear to do so maliciously.[24]

The "malicious" element of subsection (a)(6) may be satisfied by a showing of implied malice. *See Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed.2d 754 (1904); *Wheeler v. Laudani*, 783 F.2d 610 (6th Cir.1986); *St. Paul Fire & Marine Insurance Co. v. Vaughn*, 779 F.2d 1003 (4th Cir.1985); *Mason Lumber Co. v. Martin (In re Martin )*, 70 B.R. 146 (Bankr.M.D.Ala.1986).

 Malice may be determined from the conduct of the debtor in the context of the surrounding circumstances. *St. Paul Fire & Marine Insurance Co. v. Vaughn*, 779 F.2d at 1010. The purpose for which the converted funds are used is a strong factor in determining whether a conversion was committed with malice or was only a technical conversion. *Mason Lumber Co. v. Martin (In re Martin )*, 70 B.R. 146, 152 (Bankr.M.D.Ala.1986). In *Owens*, debtor had caused the converted funds to be diverted from the corporation or used for purposes that did not benefit the corporation. In the present case, Defendant testi-

---

**23.** 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904).

**24.** 4 B.R. at 516–17, 6 Bankr.Ct.Dec. at 533, 2 Collier Bankr.Cas.2d at 570–71.

fied that all of the converted funds were used to maintain South East as a going concern. The funds were used for the purchase of inventory, which was covered by Plaintiff's lien. Defendant further testified that by demanding a turnover of all of the invoice payments, Plaintiff had effectively left South East with no operating capital. Thus, the funds were necessary for the continuing operation of the corporation. The Court notes that Defendant contributed funds from his personal income to aid the corporation. Such conduct is not indicative of a malicious intent to harm creditors of South East, since strengthening the corporation would benefit the creditors of the corporation.

The Court concludes that the conversion of the funds by Defendant, although willful, was not malicious. The Court is of the opinion that the acts of Defendant were done in an attempt to aid a financially weak business, rather than to inflict an injury upon Plaintiff. Since Plaintiff has failed to prove by clear and convincing evidence that Defendant acted both willfully and with malice, the necessary elements of section 523(a)(6) have not been established. Defendant's debt to Plaintiff, therefore, is determined to be dischargeable in bankruptcy.

Plaintiff requests that it be awarded attorney's fees. Because Plaintiff did not prevail in this adversary proceeding, it is not entitled to an award of attorney's fees. Defendant requests that he be awarded reasonable attorney's fees. Since there has been no showing that Defendant is entitled to such an award,[25] the Court will deny the request.

---

**25.** *See* Fed.R.Civ.P. 54; R.Bankr.P. 7054.