In re Charles R. DRUEN, Sheila A. Druen, Debtors.

Lisa Marie BASHAM, American National Property and Casualty Company, Plaintiffs,

v.

Sheila A. DRUEN, Defendant.

Bankruptcy No. 3–90–00808(3). Adv. No. 3–90–0057.

United States Bankruptcy Court, W.D. Kentucky.

Nov. 5, 1990.

510

Gary L. Gardner, Louisville, Ky., for defendant/debtors.

David A. Harris, James N.G. Cauthen, Louisville, Ky., for plaintiffs.

## MEMORANDUM OPINION

DAVID T. STOSBERG, Bankruptcy Judge.

In this chapter 7 adversary proceeding, we are faced with an issue, heretofore unresolved in this district, concerning the status of a debt which arose as a result of the owner's failure to insure her automobile. The case is now before the court on the parties' cross motions for summary judgment, pursuant to Fed.R.Civ.Pro. 56 and Bankr.R. 7056. For the reasons which follow, we will sustain the defendant's motion and dismiss this proceeding.

The undisputed facts are as follows. On July 19, 1988, Sheila Druen was driving her automobile, with Lisa Basham as a passenger, on Kentucky 1882 in Hardin County Kentucky. Although Basham had originally planned to drive, she discovered that she had a headlight that was not working and asked Druen to drive instead.

During this trip, Druen failed to stop at a stop sign located at the intersection of Kentucky 144 and her car was struck by a vehicle travelling west on 144. The impact caused the Druen car to skid off the road and overturn, throwing Basham from the vehicle. She suffered injuries and medical expenses exceeding $15,000.00.

There was no evidence that alcohol or other drug use contributed to the accident. Instead the accident apparently was the result of Druen's lack of familiarity with the area in which she was travelling.

At the time of the accident, Druen's vehicle was uninsured. Coverage had been terminated approximately three months earlier for failure to pay the premiums. When Druen and her husband sought to obtain substitute coverage, their application was denied because of Mr. Druen's two previous DUI convictions. Despite their awareness that they lacked any insurance coverage whatsoever, the Druens continued to operate their vehicle, in violation of K.R.S. 304.39–090.

Basham's own automobile insurance carrier, American National Property and Casualty Company, paid her Basic Reparation Benefits as required under Kentucky law to its policy maximum, $10,-000.00. Basham and American National, as Basham's subrogee, thereafter filed a civil action against Mrs. Druen in Hardin Circuit Court. That proceeding was stayed, however, by the filing of the Druens' joint chapter 7 petition. This adversary proceeding followed, with Basham and American National asserting that the debt which arose from the accident is the product of the debtor's willful and malicious conduct and accordingly should be excepted from discharge under § 523(a)(6).

11 U.S.C. § 523(a)(6) excepts from discharge debts which are the product of "... willful and malicious injury by the debtor to another entity or to the property of another entity." Although the phrase "willful and malicious injury" has been a part of bankruptcy law at least since the Bankruptcy Act of 1898, it is not statutorily defined. The controlling case on the issue in this circuit, *Perkins v. Scharffe*,

817 F.2d 392 (6th Cir.1987), defines "willful" as the "deliberate or intentional" [sic] commission of acts which necessarily produce injury. "Malice" is defined as a wrongful act, committed without just cause or excessive, even in the absence of personal hatred, ill-will or spite. Thus the malice to which section 523(a)(6) refers is malice implied or imputed by law due to the nature of the act or omission: the fact that the act is, of itself, wrongful, constructively amounts to malicious intent. Accordingly, Judge Allen held that, "a wrongful act done intentionally which necessarily produces harm and is without just cause or excuse ..." would constitute a willful and malicious injury, excepting debts created thereby from discharge.

■ Only a few courts have published opinions on the issue of whether the debtor's failure to obtain statutorily-required automobile liability insurance, coupled with subsequent injury-producing negligent conduct, would constitute willful and malicious injury in the context of section 523(a)(6). Those courts considering the issue commonly have found that, while failure to obtain insurance may, in fact, amount to willful and/or malicious conduct, subsequent injury suffered in an automobile accident derives from an act of negligence and not from a failure to obtain insurance. Accordingly most courts have declined to except such debts from discharge.

This has not, however, been the outcome reached by other courts in the context of an employer's failure to procure workers' compensation insurance. A review of the decisional authority we have located on the issue follows.

In what is probably the most intellectually honest and most aptly named case on the issue, *In re Fate*, 100 B.R. 141 (Bankr.D. Mass.1989) Bankruptcy Judge Carol Kenner discussed at length the definitions of willful and malicious conduct and the competing policy considerations which arise in this context. Relying on the *Perkins* standards, she defined "willful" as a deliberate or intentional act that necessarily leads to the injury complained of. She noted that "malicious" conduct does not require spe-

cific intent or ill will, but rather is an act committed in conscious disregard of duty, without just cause or excuse.

Like Kentucky, Massachusetts imposes a statutory duty upon the owner or operator of a vehicle to maintain liability insurance. Applying the willful and malicious standard in conjunction with the debtor's breach of statutory duty, Judge Kenner concluded that the debtor's failure to obtain insurance was malicious because it was done in conscious disregard of his statutory duty. She did not, however, find the conduct to be willful for the simple reason that the debtor's failure to obtain insurance did not *necessarily* lead to injury. The injury of which the plaintiff complained was not, she held, the inevitable outcome of lack of insurance; rather it was truly the product of negligence.

Although Judge Kenner's holding allowed discharge of the judgment debt, she did not approve of the result, characterizing it as "an injustice" and referring to the debtor's conduct as "reprehensible."

Another automobile accident case, *Pechar v. Moore*, 98 B.R. 488 (D.Neb.1988), reached the same result as *Fate*. The terms willful and malicious were defined slightly differently in *Pechar* so that the court concluded that the debtor's conduct was willful but not malicious, instead of the reverse as in *Fate*. The difference is one of name only since both courts used the same reasoning: that the debtor's failure to insure did not necessarily lead to injury. Negligence while driving did. The plaintiffs have attempted to distinguish *Pechar* from the instant case on the basis that Nebraska has no statute mandating automobile liability insurance. Nebraska does, however, have a financial responsibility law, with which the debtor failed to comply. Thus it appears that there is really no significant basis for a distinction between the breach of duty in *Pechar* and the debtor's failure to insure in this case.

We have located two other failure to insure/automobile accident cases which are also in accord with *Fate* and *Pechar*: *In re Granda*, 98 B.R. 598 (Bankr.S.D.Fla.1989) and *In re Schultz*, 89 B.R. 28 (Bankr.E.D.

Wisc.1988). These cases do not analyze the issues quite as exhaustively, but both reach the same conclusion: that failure to insure does not "rise to the level" of willful and malicious conduct.

In the area of workers' compensation, however, there is opposing authority. In *In re Erickson*, 89 B.R. 850 (Bankr.D.Idaho 1988), the court found that an employer/debtor's failure to pay worker's comp insurance premiums amounted to a willful act which resulted in a 523(a)(6) exception. The opinion does not, however, discuss malice at all.

In *In re Strauss*, 99 B.R. 396 (N.D.Ill. 1989), the court's analysis was more complete than in *Erickson*. The plaintiff in *Strauss* was employed by the debtor as a laborer when he was struck in the eye with a nail. The court held that the injury occasioned by the debtor's failure to obtain workers' comp insurance was not the injury to the plaintiff's eye, which was clearly not caused by the employer. Rather the debtor's failure to insure created an injury to the plaintiff's ability to collect worker's comp benefits, as guaranteed by state law. Having found that the protected interest was this right, rather than the physical injury itself, the court found that the injury to this right amounted to both willful and malicious conduct under section 523(a)(6).

Kentucky espouses a strong, legislated policy in favor of universal automobile liability insurance. Kentucky's Motor Vehicle Reparations Act, approved by the legislature in 1975, begins, at KRS 304.39–010 with a statement of policy and purpose:

The toll of about 20,000,000 motor vehicle accidents nationally and comparable experience in Kentucky upon the interests of victims, the public, policy-holders and others require that improvements in the reparations provided for herein be adopted to effect the following purposes:

(1) To require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation and use of such motor vehicles ...

K.R.S. 304.39–090 states,

An owner of a motor vehicle registered in this Commonwealth who ceases to maintain security as required by the provisions on security may not operate or permit operation of the vehicle in this Commonwealth until security has again been provided as require by this subtitle.

So strong is Kentucky's public policy favoring universal automobile liability insurance that the Kentucky Court of Appeals, construing portions of the Motor Vehicle Reparations Act, declared that the intent of the legislation was to provide a remedy to automobile accident victims which could not be impinged upon by any means whatsoever. *Blue Cross & Blue Shield of Kentucky, Inc. v. Baxter*, 713 S.W.2d 478 (Ky. App.1986).

In the face of Kentucky's strong policy requiring financial responsibility, there is an equally compelling "fresh start" philosophy which underlies the bankruptcy code. When two such strong policies as these collide, it becomes impossible to reach a truly just result.

Having fully considered the issues attendant in this case, this court has concluded that Judge Kenner's analysis in *Fate* represents the better reasoned view of section 523(a)(6). We agree that, while the debtor's failure to maintain liability insurance is, in fact, a malicious omission, the plaintiff's injuries were not the product of willful conduct. For an act to be willful, under the *Perkins* formulation, it must necessarily produce harm. Clearly, failure to insure does not necessarily lead to such a result. Because section 523(a)(6) is in the conjunctive, a debt must be the product of both willful and malicious conduct to be excepted from discharge. Since the defendant's conduct was only malicious and not willful, the section 523(a)(6) exception does not apply.

Our holding today should not be interpreted as in any way condoning or excusing the debtor's reprehensible conduct and we recognize the injustice of this result. If, under the law as it is now written, it

were possible to except the plaintiffs' debt from discharge, we would strongly prefer to follow that path. However, the bankruptcy code and competent decisional authority construing its provisions do not allow the debt to be excepted. It is not our mission to impose what should be legislative policy considerations upon this debtor when the statute does not. Congress should be the arbiter of such policy choices.

An order sustaining the defendant's motion for summary judgment and dismissing this adversary proceeding will be put to record this day.

This memorandum opinion constitutes findings of fact and conclusions of law in accordance with Bankr.R. 7056.