**In the Matter of Walter B. WHIPPLE, Wanda M. Whipple, Debtors.**

**Bankruptcy No. 90–41609.**

United States Bankruptcy Court,
S.D. Georgia,
Savannah Division.

Nov. 5, 1991.

Claire G. Watts, Savannah, Ga., for debtor.

Frederick Bergen, Savannah, Ga., for creditor/objector.

## MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Chief Judge.

On January 16, 1991, a Chapter 13 Confirmation Hearing was held on the above-

styled case. Counsel for the creditors, Mary M. Tutt and Lawrence W. Tutt, appeared at the Confirmation Hearing and indicated their intent to file a Motion for Relief from Stay in order to proceed against Debtor, Wanda M. Whipple, with an action in Superior Court for damages arising out of an automobile accident. Debtor Wanda Whipple was involved in the accident in which Mrs. Tutt was seriously injured. The Debtor had no liability insurance on her automobile at the time of the accident. Said Motion was heard on April 9, 1991.

The Tutts' Motion for Relief from Stay was granted at the April 9, 1991, hearing to allow the Tutts to proceed in the Superior Court on the issue of damages. The Confirmation Hearing was continued to consider the Tutts' assertions that the Debtors' motive for filing bankruptcy precluded a find of "good faith" under 11 U.S.C. Section 1325(a)(3) and should result in denial of confirmation of Debtors' Chapter 13 plan.

Upon consideration of the evidence presented at the hearings, briefs and other documentation submitted by the parties and applicable authorities, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The Debtors, Walter and Wanda Whipple, filed their Chapter 13 petition on August 29, 1990. On December 8, 1988, prior to filing, Mrs. Whipple was involved in a motor vehicle collision, in which Mrs. Mary Tutt was seriously and permanently injured; another person was killed in the collision. Debtors had no liability insurance at the time of the accident as required by Georgia law. Debtors' lack of insurance was not a result of oversight or mistake. Rather, they knew that their insurance had been canceled, failed to obtain new coverage, and continued to drive their automobiles.

Mrs. Tutt's medical expenses from the accident totalled over $27,000.00. Mr. and Mrs. Tutt have filed a claim for those expenses in this bankruptcy proceeding. Debtors' other creditors are secured and include Trust Company Bank of Savannah and Fleet Finance, Inc. Fleet was granted relief from stay to foreclosure on its collateral.

In February of 1990 Mr. and Mrs. Tutt filed a suit for damages against Mrs. Whipple in the Superior Court of Chatham County. On April 5, 1990, the Honorable James W. Head, Judge of the Superior Court of Chatham County, Georgia, entered an order on Plaintiff's motion for a default judgment as to liability against the Debtor, with the amount of damages subject to further proof. The damages have yet to be awarded in that action, but may be considerable.

A confirmation hearing was held on January 16, 1991, at which time Mr. and Mrs. Tutt objected to the Debtor's plan, which did not provide for any payments to them. The plan as proposed would pay all claims in full over five years except the unliquidated claim of Mr. and Mrs. Tutt. Considering the unliquidated tort claim against the uninsured motorist-debtor, a delinquency in payments to the Chapter 13 Trustee, and feasibility problems, I could not confirm the Debtors' plan at that time. The hearing was continued.

On March 8, 1991, the Tutts filed their Motion for Relief from Stay. The Motion was granted to allow the Tutts to proceed in the Superior Court on the issue of damages, but the order did not allow the creditors to employ any means of collection against the Debtors.

On June 20, 1991, a hearing was held concerning the sale of collateral by Fleet Finance. The Tutts filed no objection to the sale but argued that the equity in the property should be paid to the Court and not directly to the Debtors. The Tutts also argued that Debtors' filing did not meet the good faith requirements of the Code. The attorney for the Tutts reiterated that his client was disabled from the wreck and that another person was killed in the wreck which involved Mrs. Whipple and the Tutts. The attorney reminded the Court that his clients had a judgment against Debtors, which was obtained before the filing of the Chapter 13 petition. The sale of the Debtors' property was approved with the pro-

ceeds to be paid to the Chapter 13 Trustee pending further hearings.

Mr. and Mrs. Tutt have objected to confirmation asserting that the effort to discharge the debt arising out of the automobile collision evidences bad faith on Debtors' part, that such debt could not be discharged in a Chapter 7 case pursuant to 11 U.S.C. Section 523(a)(6) and that that factor should bar confirmation of Debtors' Chapter 13 plan pursuant to 11 U.S.C. Section 1325(a)(3).

## CONCLUSIONS OF LAW

█ Under 11 U.S.C. Section 1325(a)(3), every Chapter 13 plan must be filed in good faith before it can be confirmed. Indeed, this Court has held that the "good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the Court in any Chapter 13 case." *Matter of Kull,* 12 B.R. 654, 658 (S.D.Ga.1981), aff'd sub. nom. *In re Kitchens,* 702 F.2d 885 (11th Cir.1983). Unfortunately, the Code does not define "good faith" for filing a Chapter 13 plan. In order to determine the existence of good faith, this Court in *Matter of Hale,* 65 B.R. 893 (Bankr.S.D.Ga.1986), reiterated the eleven factors adopted in *Kitchens, supra.* at 888–89. Those factors include:

1) The amount of the debtor's income from all sources;

2) The living expenses of the debtor and his dependents;

3) The amount of attorney's fees;

4) The probable or expected duration of the debtor's Chapter 13 plan;

5) The motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

6) The debtor's degree of effort;

7) The debtor's ability to earn and the likelihood of fluctuation in his earnings;

8) Special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessor;

10) The circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;

11) The burden which the plan's administration would place on the Trustee.

Additionally, this Court adopted substantiality of repayment and potential nondischargeability of the debt in a Chapter 7 case as factors to be considered in finding good faith. *Hale* at 895. Other courts have adopted this "totality of the circumstances" test when determining if a Chapter 13 plan is filed in good faith. *In re LeMaire,* 898 F.2d 1346 (8th Cir.1990); *In re Okoreeh–Baah,* 836 F.2d 1030 (6th Cir. 1988); *Neufeld v. Freeman,* 794 F.2d 149 (4th Cir.1986); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982); *See also Matter of Smith,* 848 F.2d 813 (7th Cir.1988); *Matter of Jones,* 119 B.R. 996 (Bankr.N.D.Ind.1990); *Matter of Belt,* 106 B.R. 553 (Bankr. N.D.Ind.1989).

The unsecured creditors here allege that their debt would be nondischargeable in a Chapter 7 case and that Debtors' attempt to avoid such a debt in this Chapter 13 case evidences bad faith under 11 U.S.C. Section 1325(a)(3).

The creditors claim of nondischargeability is based on 11 U.S.C. Section 523(a)(6) which provides the exception to discharge for a "willful and malicious" injury to a creditor's property. The creditor must prove by a preponderance of the evidence that the debt should be excepted from discharge. *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). An injury under Section 523(a)(6) must be "willful" as well as "malicious." *In re .̣lls,* 111 B.R. 186 (Bankr.N.D.Ind.1988).

Under Section 523(a)(6), the creditor first must prove that the Debtor willfully damaged the creditor's property. A willful act under Section 523(a)(6) must be deliberate and intentional. *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988); *In re Ikner,* 883 F.2d 986 (11th Cir.1989); *Matter of Brinsfield,* 78 B.R. 364 (Bankr. M.D.Ga.1987). "The word 'willful' means 'deliberate' or 'intentional', a deliberate and intentional act, which necessarily leads to an injury." 3 Collier on Bankruptcy

§ 523.16 at 523–129 (15th ed. 1991). *See Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.); cert. denied 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987).

The Eleventh Circuit distinguished the willful requirement from the malice requirement of Section 523(a)(6) in *Chrysler Credit Corp. v. Rebhan, supra.* According to the court Congress intended willful to mean "deliberate and intentional" not merely reckless; whereas, a finding of recklessness was sufficient to meet the malice requirement of Section 523(a)(6). Following the widely accepted approach in *United Bank of Southgate v. Nelson*, 35 B.R. 766, 774 (N.D.Ill.1983), the court held that "malice for purposes of Section 523(a)(6) can be established by a finding of implied or constructive malice." *Rebhan* at 1263.

Where a debtor acts in a way that is wrongful and without just cause and excuse, that debtor acted willfully and with malice; no showing of personal hatred, spite or ill-will is necessary to prove that an injury was malicious. *In re Lindberg*, 49 B.R. 228, 230 (Bankr.D.Mass.1985). To meet the willful and malicious requirement of Section 523(a)(6), the debtor must be aware that his acts violated the property rights of another. *Matter of Brinsfield*, 78 B.R. 364, 375 (Bankr.M.D.Ga.1987). *See In re Posta*, 866 F.2d 364 (10th Cir.1989) (To meet the malice requirement, the Court should look to whether or not the debtor knowingly and willfully disregarded the rights of the creditor).

This Court is aware of at least two cases which specifically find that driving without insurance is malicious but not "willful" conduct for purposes of Section 523(a)(6). *See In re Druen*, 121 B.R. 509 (Bankr. W.D.Ky.1990); *In re Fate*, 100 B.R. 141 (Bankr.D.Mass.1989). These two courts conclude that the debtor's acts were not "willful" and did not intentionally cause injury because the debtor's actions while driving were merely negligent. According to these two courts, the failure to insure did not "necessarily" lead to injury. However, both courts found that the failure to insure was malicious because it was done in conscious disregard of debtor's statutory duty to insure. *Druen* at 512; *Fate* at 143.

This Court is not persuaded by the *Druen* and *Fate* decisions. The clear and manifest statutory duty of the owner or operator of a vehicle is to maintain motor vehicle liability insurance. The Code section effective at the time of the accident, O.C.G.A. Section 33–34–4, provides:

(a) No owner of a motor vehicle required to be registered in this State or any other person, other than a self-insurer as defined in this Chapter, shall operate or authorize any other person to operate the motor vehicle unless the owner has insurance on the vehicle providing the following minimum coverage:

(1) Motor vehicle liability insurance equivalent to that required as evidence of security for bodily injury and property damage liability under the motor vehicle safety responsibility laws of this state;

(2) Compensation to injured persons without regard to fault up to an aggregate minimum limit of $5,000.00 per insured injured person ...

O.C.G.A. § 33–34–4.[1]

Also, in accordance with O.C.G.A. Section 33–34–12 Debtor could have been charged with a misdemeanor for driving without proof of insurance.[2] Anyone who drives in the State of Georgia with knowledge of the required insurance and who deliberately fails to acquire the insurance, acts willfully. Furthermore, I find that the failure to insure necessarily results in an injury. The party who is injured by an uninsured driver automatically has an impaired ability to recover compensation.

---

**1.** This provision has been repealed effective October 1, 1991. The new Section 33–34–4 effective October 1, 1991, does not include the requirement of no-fault insurance.

**2.** O.C.G.A. Section 33–34–12, which required proof of insurance while driving and made the failure to produce proof of insurance a misdemeanor, was repealed effective January 1, 1991. Currently under the similar provisions of O.C.G.A. Section 40–6–10, a driver can be charged with a misdemeanor for failing to have proof of motor vehicle insurance.

The act of driving uninsured destroys the fund from which at least minimum compensation can be recovered. At best the injured party's recovery is delayed since collection from the at-fault driver's personal assets will inevitably be more difficult, expensive and piecemeal. At worst there will be no recovery at all in the case of a judgment-proof defendant. In either case the party suffering personal injury suffers another, distinct economic injury as a result of the lack of insurance. When this failure is intentional, it meets the willful requirement of Section 523(a)(6). *See In re Erickson,* 89 B.R. 850, (Bankr.D.Idaho 1988) (The failure to provide worker's compensation insurance "necessarily" leads to the creditor's position of being uninsured and is an intentional failure resulting in nondischargeability of the worker's compensation debts under Section 523(a)(6)). *Contra Matter of Hampel,* 110 B.R. 88 (Bankr.M.D.Ga.1990).

Those courts holding that debts resulting from a failure to carry workers' compensation are dischargeable (and, by inference, automobile liability insurance) conclude that the failure to carry workers' compensation does not "necessarily" lead to injury because another event, the physical injury to the employee, must occur. I find such an analysis to be unpersuasive. It is true that the act of failing to provide insurance does not cause a worker's physical injury. However, it is foreseeable that workers will sustain on-the-job injuries and to the extent that an employer fails to provide insurance as required by law that failure necessarily causes economic injury to any worker who sustains a physical one. Likewise, it is foreseeable that any driver may

be involved in an accident and that such an accident may be determined to be the fault of such driver. In light of that possibility, the intentional act of driving without insurance coupled with negligent driving inflicts both a physical and economic injury. The economic injury I find to be a willful one.

■ Additionally, under Section 523(a)(6), the debtor's acts must be "malicious" which means reckless or in conscious disregard of one's duties and which can be implied from debtor's conduct under a constructive malice theory. *Chrysler Credit Corp. v. Rebhan,* 842 F.2d 1257 (11th Cir.1988). I do agree with the *Fate* and *Druen* courts that malice may be inferred from Debtor's act of driving uninsured and in conscious disregard of the statutory duty to insure. *Druen* at 512; *Fate* at 143. Furthermore, this court considers the disregard for the statutory duty to insure in violation of the public policy of this state to be malice *per se.* I therefore find that the Debtor in driving without the minimum liability insurance acted both willfully and maliciously under the mandates of Section 523(a)(6).[3] In doing so I reject the rationale of cases which focus on the fact that the Debtor's driving was merely negligent and not intentional. Rather, it is the intentional act of driving without insurance in disregard of the rights of those whose injuries will be uncompensated that is at issue.

Accordingly, if this were a Chapter 7 case, I would be compelled to find that the portion of the judgment that should have been covered by the minimum required liability insurance under O.C.G.A. Section 33–34–4 would be a nondischargeable debt.[4]

---

**3.** Even if I were to find that Debtor's acts were not willful, the Debtor's clear malice in driving uninsured, together with the other *Kitchens'* factors discussed below would justify this Court in holding that Debtor's plan was not filed in good faith. The Debtor's irresponsible and malicious acts are relevant in determining the circumstances in which the debt was incurred. *Kitchens* at 888–89.

**4.** Under O.C.G.A. § 33–34–4(a)(1) set out above, the owner or operator of a motor vehicle must provide liability insurance in the amounts required by the motor vehicle safety responsibility

laws. Under the applicable motor vehicle safety responsibility law, O.C.G.A. § 40–9–37, the amount of the liability insurance policy must be for a sum:

> ... of not less than $15,000.00 because of bodily injury or death of one person in any one accident and, subject to such limit for one person, to a limit of not less than $30,000.00 because of bodily injury nor death to two or more persons in any one accident and, if the accident has resulted in injury to or destruction of property, to a limit of not less than $10,000.00 because of injury to or destruction of property of others in any one accident.

To the extent that the economic loss exceeds the statutory minimum limits, the Debtors' act was not malicious. Although they willfully failed to procure insurance coverage there was no reckless disregard of any statutory duty on which to base a finding of malice. Therefore, since the conduct while driving was merely negligent and not intentional, any debt for injury in excess of the minimum limits would be dischargeable in a Chapter 7 case.

This analysis under Section 523(a)(6) follows the policies set forth by the Eleventh Circuit in *In re Fielder,* 799 F.2d 656 (11th Cir.1986). Although the *Fielder* case, admittedly fact specific, involved egregious conduct in which the debtor drank twelve beers and then drove a vehicle, the case is analogous to Debtor's driving uninsured. In *Fielder,* the debtor's blood alcohol level was .208 when he caused an automobile collision which resulted in extensive physical injuries and property damage. As this case was decided before the effective date of Section 523(a)(9), the Court based its decision on the willful and malicious elements of Section 523(a)(6). The Eleventh Circuit looked to the legislative history of Section 523(a)(6) to find the debts non-dischargeable. According to the Court, "Congress could not have meant to permit the perpetrator to walk away from his tort liability simply by walking from an adverse decision in the tort court into the bankruptcy court." *Fielder,* 799 F.2d at 661. Similarly, in the instant case, Debtor's acts should be considered nondischargeable under Section 523(a)(6).[5]

As Debtor has filed a Chapter 13 petition, the Section 523(a)(6) exception to discharge is not directly applicable to her case. The Section 523 exceptions to discharge apply to Chapters 7, 11, and 12 and do not apply to Chapter 13 cases. *Belt,* 106 B.R. at 568. Most of the Section 523(a) exceptions to discharge are not found in the Chapter 13 discharge provisions. Under the current provisions of 11 U.S.C. Section 1328(a), a Chapter 13 debtor is eligible for a full compliance discharge for all debts except those:

1) [P]rovided for under section 1322(b)(5) of this title;

2) of the kind specified in Section 523(a)(5), 523(a)(8) or 523(a)(9) of this title; or

3) for restitution included in a sentence on the debtor's conviction of a crime.

11 U.S.C. § 1328(a). Section 1328(a) was amended in 1990 to include the reference to sections 523(a)(8) and 523(a)(9) and to add the provision for nondischargeability of debts for restitution. Although Section 523(a)(6) has not been added to the Chapter 13 discharge provisions, the potential nondischargeability of the debt is a factor bearing upon the issue of good faith. *Hale,* 65 B.R. at 895. A "Chapter 13 debtor's attempt to discharge a debt nondischargeable in Chapter 7 is not *per se* bad faith under section 1325(a)(3), but rather is simply *one* of many factors to be considered in applying the totality of the circumstances standard." *In re LeMaire,* 898 F.2d at 1354 (quoting the dissent). Also, the exceptions under Section 523(a) are not automatic and must be proved by a preponderance of the evidence. *Grogan v. Garner,* —— U.S. ——, 111 S.Ct. 654, 112

O.C.G.A. § 40-9-37(a). The amount above required for minimum liability insurance is the portion of any judgment which I would deem non-dischargeable under Section 523(a)(6) for the failure to insure.

5. The tort debt cases under Section 523(a)(6) where there is an element of moral indignation upon a finding of dischargeability, are distinguishable from the secured collateral cases in which the bank or secured party has an opportunity to "police" its collateral. *See generally In re Fate,* 100 B.R. 141 (Bankr.D.Mass.1989) (The willfulness requirement may be prudent, but it has the effect of permitting the discharge of debts, such as this [tort] debt, that justice and equity would not permit to be discharged). The ability to police and inspect the collateral provides a stronger basis for the dischargeability of the secured debts in contrast to a case finding dischargeability of a debt owed to a completely innocent and unwary tort victim. *See generally In re Maiolo,* 12 B.R. 114 (Bankr.N.D.Ga.1981) (Despite evidence suggesting that debtor breached his contractual duties to bank by failing to insure and keep the car in good repair, bank failed to prove that debtor willfully and maliciously injured the car which secured debtor's loan debt to bank, and thus debt was dischargeable).

L.Ed.2d 755 (1991). The Bankruptcy Code in 11 U.S.C. Section 1324 provides that after notice, the court shall hold a hearing on confirmation of a plan. A party in interest may object to confirmation of a plan. Under Section 1324, the bankruptcy court has the independent duty to scrutinize the proposed plan and has the power to disapprove it regardless of the fact that the plan is not opposed by the trustee. *In re Martin,* 17 B.R. 924 (N.D.Ill.1982).

Besides considering the potential nondischargeability of the debt and the circumstances in which the debt was incurred, this Court must consider Debtors' motives in filing for bankruptcy, their bona fides in dealing with their other creditors, the existence of other legitimate debts, and substantiality of repayment. *Kitchens,* 702 F.2d at 888–89; *See generally Belt,* 106 B.R. at 568.

■ The timing of Debtors' filing for Chapter 13 relief, just a few months after entry of the default judgment, indicates an attempt to avoid payment to these creditors. It appears that Debtors were motivated to file their plan because of this unliquidated tort debt and that the Debtors' lack the sincerity required for relief under Chapter 13. *See In re Hawes,* 73 B.R. 584 (Bankr.E.D.Wis.1987) (If a Chapter 13 petition is filed merely as a litigating tactic to gain leverage and/or to block enforcement of a creditor's rights in a state court action, then the confirmation of the Chapter 13 plan must be denied for lack of good faith). Additionally, the Debtor's petition failed to list any debt owed the Tutts, but did list their attorneys as "Attorneys who are handling suit" on their Schedule 12(c), Creditors Having Unsecured Claims Without Priority. The only other unsecured claim listed in the petition is another attorney, listed as "Attorney who is handling collection—suit." Fleet Finance, one of the secured creditors, was granted relief from the stay to foreclose and sell its collateral. Although the Debtors were given a chance to make payments to Fleet and avoid the foreclosure the Debtors failed to make these payments, and relief from stay was granted. The only significant debt, besides the remaining secured debt to Trust Company Bank, is the debt owed to the innocent tort victims. Debtors' plan provides for payments to Trust Company Bank, but provides for no payments to these unsecured creditors. Clearly this plan does not provide for substantial payment of the Tutts' debts. *Matter of Smith,* 848 F.2d at 818; *In re Rimgale,* 669 F.2d 426 (7th Cir.1982).

Under the totality of the circumstances test the Court should determine if there has been abuse of the provisions, purpose, or spirit of Chapter 13. *Smith,* 848 F.2d at 818; *See In re Rimgale,* 669 F.2d 426 (7th Cir.1982). A Chapter 13 plan should be confirmed unless there is evidence of dishonesty, serious misconduct, or abuse. *Matter of Belt,* 106 B.R. at 573; *See Neufeld v. Freeman,* 794 F.2d 149 (4th Cir. 1986). If the court discovers unmistakable manifestations of bad faith, confirmation must be denied. *In re Waldron,* 785 F.2d 936 (11th Cir.1986).

After an examination of the "totality of the circumstances" surrounding the filing of Debtors' petition and their plan, I find that the plan was not proposed in good faith and constitutes an abuse of the purpose of Chapter 13.

### ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Tutts' objection to confirmation is sustained and this case is dismissed. 11 U.S.C. § 1307.