In re David Gene
EBERHARDT, Debtor.

John L. PRITCHARD, Bobby W.
Blizzard, and Lincoln Randolph
Snodgrass, Plaintiffs,

v.

David Gene EBERHARDT, Defendant.

Bankruptcy No. 3–88–00666.
Adv. No. 3–88–0090.

United States Bankruptcy Court,
E.D. Tennessee.

Sept. 16, 1988.

Robert L. Ogle, Jr., Sevierville, Tenn., for plaintiffs.

John H. Fowler, Knoxville, Tenn., for debtor/defendant.

## MEMORANDUM

JOHN C. COOK, Bankruptcy Judge.

Asserting that the defendant-debtor willfully and maliciously drove his vehicle without automobile liability insurance, the plaintiffs, injured in an automobile accident with the defendant, seek to have their damage claim against the defendant declared nondischargeable under 11 U.S.C.A. § 523(a)(6) (West 1979). The defendant has moved to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted. For the reasons which follow, the court agrees with the defendant that this case should be dismissed.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(I) (West Supp.1988).

On February 23, 1988, the plaintiffs filed a state court lawsuit against the defendant seeking damages for injuries sustained in an automobile accident. According to plaintiffs, the defendant caused the accident when he negligently and recklessly drove his vehicle into a truck carrying the plaintiffs. Before the matter reached trial, the defendant filed a chapter 7 petition in this court. Subsequently, the plaintiffs filed the instant complaint alleging their damage claim is nondischargeable under 11 U.S.C.A. § 523(a)(6) (West 1979).

The plaintiffs do not contend the accident was caused by willful or malicious conduct by the defendant; rather they contend the defendant's failure to carry liability insurance constitutes the willful and malicious

conduct in this case. The complaint alleges, "[t]he debtor deliberately, intentionally, willfully and for purpose of the Bankruptcy Code, maliciously drove his vehicle with no attempt to protect [through insurance] those innocent persons who would be injured by his driving."

Section 523(a)(6) of the Bankruptcy Code reads as follows:

*Exceptions to discharge.*

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

\*   \*   \*   \*   \*   \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

A "willful" act is a "deliberate and intentional act which necessarily leads to injury." *Perkins v. Scharffe,* 817 F.2d 392, 394 (6th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987) (quoting 3 *Collier on Bankruptcy* ¶ 523.16, at 523–117 (15th ed. 1986)). " 'Malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani,* 783 F.2d 610, 615 (6th Cir.1986). Consequently, "a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." *Perkins,* 817 F.2d at 394 (quoting 3 *Collier on Bankruptcy* ¶ 523.16, at 523–117 (15th ed. 1986). The question in this case is whether defendant's alleged failure to obtain automobile liability insurance can constitute a willful and malicious injury to plaintiffs or plaintiffs' property under § 523(a)(6).

In the area of workmen's compensation, there have been at least two cases holding that an employer's liability for work-related injuries to an employee is nondischargeable where the employer willfully and maliciously failed to obtain workmen's compensation insurance. *See Zielinski v. Strauss (In re Strauss),* 86 B.R. 559 (Bankr.N.D.Ill.1988); *Juliano v. Holmes (In re Holmes),* 53 B.R. 268 (Bankr.W.D.Pa.1985). In both cases, the courts noted the applicable workmen's compensation statutes compelled employers to obtain workmen's compensation insurance. The courts reasoned that because it was foreseeable an employee eventually would be injured, the employer's deliberate failure to obtain workmen's compensation insurance constituted a willful and malicious injury to the employee's statutory right to insurance benefits. *Zielinski,* 86 B.R. at 560; *see Juliano,* 53 B.R. at 270. *Juliano* characterized the injury as an injury to "the plaintiff and his property comprising his statutory right of redress for his injuries and damages from a Workmen's Insurance carrier." *Juliano,* 53 B.R. at 270.

*Aldridge v. Scott (In re Scott),* 13 B.R. 25 (Bankr.C.D.Ill.1981), reached a different conclusion. In *Aldridge,* the court stated that in order for a plaintiff to show defendant's failure to carry workmen's compensation insurance constituted a willful and malicious injury to plaintiff or plaintiff's property rights, plaintiff had to show defendant's failure to carry insurance was a wrongful act done intentionally, which necessarily produced harm and was without just cause or excuse. In dismissing plaintiff's dischargeability complaint, the court stated:

Plaintiff's theory fails on the requirement that defendant's act necessarily produced harm. Failure to insure against Workmen's Compensation claims, or to qualify as a self-insurer, produced only the potential for harm. Acts producing the potential for harm or injury are negligent but not willful or malicious, within the purview of § 523(a)(6), unless the harm will inevitably follow defendant's wrongful act. Here failure to insure does not inevitably cause harm; an uninsured employer may never have a claim resulting in a damage judgment against him, or, if he does, may be able to pay the claim out of the operating funds of the business.

13 B.R. at 27. *Accord, Samuel v. Baitcher (In re Baitcher),* 36 B.R. 588 (Bankr.N. D.Ga.1983); *Hamilton v. Brower (In re Brower),* 24 B.R. 246 (Bankr.D.N.M.1982).

Even if one accepts the view of *Zielinski* and *Juliano* that a debtor's willful and malicious failure to procure workmen's compensation insurance can injure the statutory or property right of the employee, the instant case is distinguishable in that here there exists no statutorily-created property right that could have been injured due to the defendant's alleged willful and malicious act.

In Tennessee drivers are not required to obtain automobile liability insurance before driving on Tennessee roadways. Drivers are subject, however, to the provisions of the Tennessee Financial Responsibility Act (TFRA). Tenn.Code Ann. § 55–12–101, *et seq.* (1980 and Supp.1987). Generally, that Act requires the owner or operator of a motor vehicle involved in a traffic accident resulting in bodily injury, death, or property damages exceeding $200 to submit a report of the accident to the Tennessee Commissioner of Safety within twenty days of the accident. Tenn.Code Ann. § 55–12–104 (Supp.1987). If the Commissioner determines, after receipt of notice of a claim filed against such owner or operator, that there is a reasonable possibility of a judgment being entered against such owner or operator, he must revoke the owner or operator's driver's license and vehicle registrations, or in the case of a nonresident, the state driving privileges, unless the owner or operator deposits sufficient security to satisfy any judgment resulting from the accident which may be recovered against such owner or operator. Tenn.Code Ann. § 55–12–105(a) (Supp. 1987). Acceptable proof of financial security consists of written proof of insurance, a sufficient cash deposit, a bond, or notarized releases executed by all parties who have filed claims with the Commissioner. Tenn. Code Ann. § 55–12–105(b) (Supp.1987).

License revocation can be avoided if the owner or operator falls within one of fifteen exceptions to revocation contained in Tenn.Code Ann. § 55–12–106. One of the exceptions pertains to persons who have received a discharge in bankruptcy discharging those claims arising out of the accident. The Act provides:

> The requirements of security and revocation contained in this chapter shall not apply to:
>
> \* \* \* \* \* \*
>
> (15) Any person who has obtained a discharge in bankruptcy that discharged all claims against the person because of the accident listed in the petition; provided, however, that the discharge shall not relieve the person from the requirements of giving and maintaining proof of financial responsibility as required by § 55–12–126 and such person must pay a restoration fee of sixty-five dollars ($65.00), and pass the driver's license examination.[1]

Tenn.Code Ann. § 55–12–106(15) (Supp. 1987).

While the TFRA is a regulatory statute designed to remove from Tennessee's highways financially irresponsible drivers who have caused automobile accidents in this state, the Act does not give the plaintiff any right to the availability of insurance to satisfy a claim.

Any right created by the TFRA is limited to the remedies provided by the Act. *See Turner v. Harris*, 198 Tenn. 654, 281 S.W. 2d 661 (1955) (construing a predecessor statute). Ordinarily, an injured party in an automobile accident, who has not yet obtained a judgment, has a right to file with the Commissioner of Safety a claim against the owner or operator of a motor vehicle causing the accident.[2] As previously not-

---

**1.** Recently, the district court for the Middle District of Tennessee affirmed a decision of the bankruptcy court invalidating that portion of § 55–12–106(15) which requires a discharged debtor to pay $65 to avoid license revocation. *Norton v. Tennessee Dept. of Safety* (*In re Norton*), 84 B.R. 119 (Bankr.M.D.Tenn.1988). Noting that of all those owners or operators excepted from the license revocation provisions of the Act, only debtors in bankruptcy were required

to pay a fee of $65 to avoid license revocation, the court found such discrimination violated the provisions of 11 U.S.C.A. § 525(a) (West Supp. 1988).

**2.** Where a claimant has obtained a judgment for injuries and damages arising out of a vehicle accident, the claimant may send a certified copy of the judgment to the Commissioner of Safety. If the owner or operator of a vehicle against

ed, if the Commissioner determines that a judgment against the owner or operator is reasonably possible, the owner or operator will lose his driver's license and registrations unless he provides financial security demonstrating he can satisfy any potential judgment resulting from the accident.

The filing of a bankruptcy case by such owner or operator alters the claimant's remedies under the TFRA. First, the automatic stay provisions of 11 U.S.C.A. § 362 (West 1979 & Supp.1988) prohibit the claimant from using the TFRA to assist the collection or reaffirmation of a debt. *See Duffey v. Dollison,* 734 F.2d 265, 272 (6th Cir.1984) *(dictum).* Second, § 55–12–106 (15) of the TFRA relieves a debtor who has obtained a discharge of claims arising out of the accident from providing financial security demonstrating he can satisfy a potential judgment for injuries and damages caused by the accident (although the debtor is not relieved from providing proof of future financial responsibility as required by § 55–12–126).[3] Hence, any limitation on plaintiffs' rights or remedies under the TFRA comes not from the failure of the defendant to procure and maintain liability insurance, but rather from the application of bankruptcy law and the bankruptcy exceptions contained in the TFRA itself. Consequently, unlike *Zielinski* and *Juliano,* the alleged failure of the defendant to procure or maintain insurance could not have caused injury to a property right of the plaintiffs.

The plaintiffs cite *Moore v. Pechar (In re Pechar),* 78 B.R. 568 (Bankr.D.Neb.1987), in support of their position that failure of a debtor to obtain automobile liability insurance can constitute a willful and malicious injury to one injured by debtor's driving. In *Moore,* the plaintiff obtained a state court judgment against the defendant for injuries and damages caused when the defendant negligently ran a red light and collided with plaintiff's automobile. At the time of the accident, the defendant did not have liability insurance. Because the defendant was unable to prove to the state of Nebraska that he was capable of paying any judgments obtained against him as a result of the accident, his driver's license was suspended under Nebraska's Motor Vehicle Safety Responsibility Act. The defendant later filed a petition for relief under chapter 7 of the Bankruptcy Code. The plaintiff then filed a complaint to obtain a determination of the dischargeability of the judgment debt.

Following a trial on the dischargeability complaint, the court found that the defendant-debtor willfully drove his car knowing that if an injury occurred he would be unable to respond financially. The court then concluded, rather summarily, that the elements of willful and malicious had been met and that the obligation represented by the state court judgment was nondischargeable under § 523(a)(6) of the Bankruptcy Code.

The rationale of *Moore* is not clear. If *Moore* construed Nebraska law as creating a property right in favor of the plaintiff that was injured by the defendant's failure to carry insurance, then *Moore* is distinguishable from the instant case for the same reasons as are *Zielinski* and *Juliano.* On the other hand, if *Moore* is interpreted as holding that a debtor's failure to obtain automobile liability insurance can constitute a willful and malicious injury even though no property right to such insurance protection is created in favor of the injured party, the court disagrees with *Moore's* conclusion.

whom the judgment was obtained does not pay the judgment within 60 days of the entry of the judgment, the Commissioner will revoke the driver's license and registrations of such owner or operator. Tenn.Code Ann. § 55–12–118 (Supp.1987). Again, a debtor who has obtained a discharge in bankruptcy of the accident claims is excepted from the revocation provisions of § 55–12–118 by § 55–12–106(15).

3. Although the defendant in this case has not yet received his discharge, there is support for interpreting the TFRA and in particular § 55–12–106(15) as being applicable to debtors "who have scheduled a dischargeable debt resulting from an automobile accident and for whom a discharge is available when administration of the case is complete." *Norton v. Tennessee Dept. of Safety (In re Norton),* 76 B.R. 624, 629 (Bankr.M.D.Tenn.1987), *aff'd,* 84 B.R. 119 (M.D.Tenn.1988).

In sum, the defendant's alleged failure in this case to maintain automobile liability insurance could not constitute a wrongful act which necessarily leads to injury. Obviously, the failure to carry insurance does not necessarily lead to injuries inflicted in an automobile accident. Moreover, the failure to carry automobile liability insurance does not injure a property right of the plaintiffs to insurance proceeds since Tennessee law does not recognize such a property right. Thus, even if the plaintiffs prove the defendant deliberately failed to carry automobile liability insurance at the time of the accident, plaintiffs could not establish that this omission resulted in a willful and malicious injury to plaintiffs or plaintiffs' property within the meaning of § 523(a)(6).

The court will enter an order dismissing plaintiffs' complaint for failure to state a claim upon which relief can be granted.