**In re Jane L. PERRY, Debtor.**

**LSI FINANCIAL GROUP, Plaintiff,**

**v.**

**Jane L. PERRY, Defendant.**

**Bankruptcy No. 90–00512–GP3–7.
Adv. No. 394–0007A.**

United States Bankruptcy Court,
M.D. Tennessee.

April 8, 1994.

Kenneth J. Mitteldorf, Nashville, TN, for plaintiff.

David E. Phillips, Nashville, TN, for debtor/defendant.

### MEMORANDUM

ALETA A. TRAUGER, Bankruptcy Judge.

LSI Financial Group (LSI) objects to the dischargeability of the debtor's obligation to LSI pursuant to 11 U.S.C. § 523(a)(6). The issue presented is whether the debtor's failure to keep her automobile insured constitutes a willful and malicious injury to LSI's interest in the automobile. The court concludes that, under the circumstances presented here, it does not. The following are findings of fact and conclusions of law. Fed. R.Bank.Proc. 7052.

### I

The debtor, Jane L. Perry, filed a petition for relief under Chapter 13 of the Bankruptcy Code on January 18, 1990. LSI, by way of its predecessor in interest, Brookland Financial Corp., was the holder of an allowed claim against Ms. Perry, secured by a properly perfected security interest in her 1986 Audi automobile. Ms. Perry's Chapter 13 plan, which was confirmed on February 20, 1990, provided for LSI to be treated as secured to $8,000 of its claim, which was in the amount of $11,172.46.

On or about March 14, 1990, Ms. Perry's insurance company issued a notice of cancellation of insurance on her Audi automobile, effective April 1, 1990. Ms. Perry is a single mother with two children. At the time her insurance was cancelled, one of her children was having serious medical problems, and not all of the medical expense was covered by insurance. She testified that her choice at that time was to pay for the medical treatment of her child or to pay the insurance premium. She paid the medical bills and did not renew her insurance coverage, thereby violating the Local Rules of this Court.[1] The creditor received notice of the cancellation but took no action.

Some four months after the insurance was cancelled, on August 11, 1990, Ms. Perry's automobile was destroyed in an accident.

She did not tell her lawyer about the loss of the car but continued to make her Chapter 13 payments under her plan as originally confirmed. This resulted in LSI's continuing to be paid as a secured creditor for some 27 months after the car was destroyed. Ms. Perry finally told her lawyer about the accident in November of 1992, and he promptly filed a motion to surrender the collateral to LSI, with notice to LSI. The motion specifically recited that the car had been totally destroyed in an auto accident. LSI did not respond to the motion and, on December 18, 1992, an order was entered, granting the request to surrender the automobile and ordering that the Chapter 13 plan be modified so as to treat any remaining claim of LSI as unsecured. LSI received a copy of the order but took no action.

Some six months after the order to surrender the automobile was entered, the creditor wrote a letter to Ms. Perry's lawyer stating that, if they did not receive proof of insurance within 10 days, they would seek relief from the stay "to recover our collateral." On September 1, 1993, a month after the Chapter 13 case was converted to a Chapter 7 because the debtor had lost her job, the creditor again wrote to Ms. Perry's lawyer, asking if the debtor intended to keep the collateral and enter into a reaffirmation agreement. In October of 1993, almost a year after the Order for surrender of the automobile was entered and over three years after the creditor received notice of cancellation of the debtor's automobile insurance, the creditor filed a motion for relief from the stay.

LSI filed a secured claim in Ms. Perry's Chapter 7 case for $6,055.50. The Final Report of the Chapter 13 trustee shows that LSI received, over the course of the Chapter 13, principal in the amount of $3,831.34 and interest in the amount of $1,759.88 on the secured portion of its claim and principal in the amount of $1,279.98 on the unsecured portion of its claim. The total balance due to the creditor at the end of the Chapter 13

---

1. Local Rule 3.61 requires the debtor to provide proof of insurance to the creditor and the trustee at or before the § 341 meeting. Local Rule 3.63(2) provides that if insurance lapses during the pendency of the case, the debtor is enjoined from using the vehicle as long as the vehicle remains uninsured.

case was $271.79. The creditor seeks to have this court hold nondischargeable the difference between its original secured claim (in the amount of $8,000) and the amount paid during the Chapter 13 on that secured claim ($3,831.34), or $4,168.66, plus its attorney fees and costs for the filing of this adversary proceeding.

## II

■ Exceptions to discharge are to be construed strictly against the creditor. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). Section 523(a)(6) of the Bankruptcy Code excepts from discharge any debt "for willful and malicious injury by the debtor ... to the property of another entity." 11 U.S.C. § 523(a)(6). The Code does not define the terms "willful" or "malicious," and courts have applied varying standards in addressing this issue.

The leading Sixth Circuit authority on this issue is *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987), where the Court stated:

An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill-will. The word 'willful' means 'deliberate or intentional,' a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

*Id.* at 394 [citing *3 Collier on Bankruptcy* 523–111 (15th Ed.1986) ]. *See Vulcan Coals v. Howard*, 946 F.2d 1226, 1228–29 (6th Cir. 1991); *see also Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986).

■ The Court finds that the debtor's actions were not willful and malicious under the standard set forth in *Perkins*. While the parties in this case do not dispute that the debtor's actions in failing to renew her auto insurance and in driving her car without insurance were deliberate and intentional, they do not meet *Perkins'* test for willfulness because they did not "necessarily lead to injury." Various courts interpreting *Perkins* in this Circuit have concluded that driving

without insurance, although in violation of applicable state law, was not "willful" under § 523(a)(6) because it did not necessarily result in the automobile accident. *See, e.g., In re Adams*, 147 B.R. 407 (Bankr.W.D.Mich. 1992); *In re Druen*, 121 B.R. 509 (Bankr. W.D.Ky.1990); *In re Eberhardt*, 92 B.R. 773 (Bankr.E.D.Tenn.1988); *see also In re Phillips*, 153 B.R. 758, 763 (Bankr.E.D.Mich. 1993) (§ 523 requires more than simply a knowing breach of contract to insure a leased vehicle); *In re Roberson*, 92 B.R. 263, 264 (Bankr.S.D.Ohio 1988) (operating vehicle in violation of state law does not, without more, establish willfulness or maliciousness under § 523(a)(6)).

■ Further, the debtor's actions were not malicious because they were not "without just cause or excuse." The debtor failed to renew her insurance because she incurred significant medical bills for treatment of her child and did not have sufficient funds to pay both the medical bills and the auto insurance premium. Although the failure to maintain auto insurance was a violation of Local Rule 3.63(2), the debtor's decision to use her limited funds to pay medical bills instead constitutes sufficient "just cause or excuse" for purposes of § 523. *See Mathes v. Woolner (In re Woolner)*, 109 B.R. 250 (Bankr. E.D.Mich.1990) (where debtors had to make "hard decisions regarding the use of their limited time and money," failure to keep up maintenance on dairy farm was excusable). In addition, unlike the debtor in *General Motors Acceptance Corporation v. Long (In re Long)*, No. 389–05156, Adv. No. 392–00531, 1993 WL 719571 (Bankr.M.D.Tenn. Mar. 17, 1993), Ms. Perry continued to make payments on the creditor's claim as if it were still secured by the automobile for 27 months after the automobile's destruction, and she only converted her case to a Chapter 7 (three years after the car was destroyed) because she lost her job.

Also militating against a finding of malice on the part of the debtor is the fact that she knew that LSI had done nothing in response to its receiving notice of cancellation of her insurance. Local Rule 3.63 entitles the creditor to demand proof of reinsurance and to take possession of the vehicle if such proof is

not timely provided.[2]  Since the creditor did not avail itself of its remedies, it would not have been an unreasonable assumption for the debtor to conclude that the creditor was not concerned about the lapse of insurance. The debtor's continuing to drive the uninsured automobile under that assumption could hardly be described as "malicious." See *In re Walsh,* 143 B.R. 691, 696 (Bankr. N.D.Ohio 1992) (knowledge and acquiescence of bank in contractor's method of obtaining construction loan draws supported determination that contractor's actions were not without just cause or excuse).

The creditor argues that *In re Seals,* 110 B.R. 331 (M.D.Tenn.1989) supports his position.  *In re Seals* relied upon *Wheeler v. Laudani,* instead of upon *Perkins v. Scharffe,* the later Sixth Circuit decision. However, *Wheeler v. Laudani* is consistent with *Perkins v. Scharffe.*  Under the standard set forth in all three cases, Ms. Perry had "just cause or excuse" for allowing her car to be uninsured for the few months prior to its destruction in an accident.  She had to choose between paying for the medical care of her child and paying an insurance premium.  In addition, she knew that the creditor had received notice of the cancellation of her insurance and had taken no action as a result of that notification.  Her continuing to drive the vehicle under those circumstances can hardly be described as "malicious."

Upon consideration of all the facts and circumstances in this case, the Court concludes that the debtor's actions, although in violation of applicable Local Rules, do not rise to the level of "willful and malicious" conduct so as to except LSI's debt from discharge.  An appropriate Order will be entered.

2.  Local Rule 3.63 provides in pertinent part:
  (1) A creditor with an allowed claim secured by the motor vehicle for which insurance has lapsed shall notify, in writing, the debtor and the debtor's attorney of such lapse of insurance....

.    .    .    .    .

  (3) If the debtor fails to provide proof of reinsurance to the creditor within three (3) business days following delivery of the notice provided in subsection (1) of this section, the debtor shall surrender the motor vehicle to the creditor or the creditor may take possession of the motor vehicle securing its claim and hold the same pending presentation of proof of insurance by the debtor....