In re Bryan N. GLASS and Jennifer L. Glass, Debtors.

Shannon WESTFALL, Plaintiff,

v.

Bryan N. GLASS and Jennifer L. Glass, Defendants.

Bankruptcy No. 96–20929.
A.P. No. 96–2006.

United States Bankruptcy Court,
E.D. Michigan,
Northern Division.

March 7, 1997.

John M. Morosi, for Plaintiff.

*OPINION SUPPLYING REASONS FOR DISMISSING COMPLAINT FOR DETERMINATION OF NONDISCHARGEABILITY*

### Introduction

ARTHUR J. SPECTOR, Bankruptcy Judge.

Shannon Westfall was injured in an automobile accident while riding in a car driven by Jennifer Glass and owned by the latter's husband, Bryan Glass. Westfall sued the Glasses in Michigan state court, and obtained a default judgment against them in the amount of $170,000.

As the vehicle's owner, Mr. Glass was required by law to carry automobile liability insurance. *See* Mich.Comp.Laws § 500.3101. However, no such insurance was in place at the time of the accident. Facing the full brunt of the judgment entered against them, the Glasses filed for chapter 7 bankruptcy relief. This adversary proceeding was commenced on October 3, 1996, when Westfall filed a complaint alleging that the judgment debt is nondischargeable under 11 U.S.C. § 523(a)(6).

The Debtors did not respond to the complaint, and the clerk entered a default against them on December 19, 1996. *See* F.R.Civ.P. 55(a) (incorporated by F.R.Bankr.P. 7055). The Plaintiff then asked that the Court enter judgment by default pursuant to F.R.Civ.P. 55(b) (incorporated by F.R.Bankr.P. 7055). After carefully reviewing the complaint, the Court issued an order to show cause why the case should not be dismissed. *See generally, e.g.,* 6 *Moore's Federal Practice* ¶ 55.05[2] (2d ed. 1996) ("A default judgment does not follow as a matter of right ... after entry of default." In determining whether default judgment should enter, the court should consider "the merit of plaintiff's substantive claim ... [as well as] the sufficiency of the complaint.").

The Plaintiff filed a brief in opposition to dismissal, and a hearing was held January 31, 1997. At this hearing, the Court dismissed the case because the complaint "fail[ed] to state a claim upon which relief can be granted." F.R.Civ.P. 12(b)(6) (incorporated by F.R.Bankr.P. 7012(b)). This

opinion sets forth the conclusions of law which formed the basis for that ruling. F.R.Bankr.P. 7052.[1]

Section 523(a)(6) excepts from discharge "any debt— ... for willful and malicious injury by the debtor." 11 U.S.C. § 523(a)(6). As this Court previously explained:

> An act is willful under § 523(a)(6) if it is "done intentionally." ... It is malicious if the "actor knows [that the act] is substantially certain to result in harm to another," and if there is no "just cause or excuse" for the act.

*Merritt v. Thompson* (*In re Thompson*), 162 B.R. 748, 750 (Bankr.E.D.Mich.1993) (citations omitted); *see also In re Woolner,* 109 B.R. 250, 254 (Bankr.E.D.Mich.1990).

The Plaintiff asserted that the judgment against the Debtors should be declared nondischargeable pursuant to § 523(a)(6) because the Debtors' intentional operation of an automobile without the liability insurance required by Michigan law was a willful and malicious act resulting in injury to her. *See* Complaint at ¶¶ 28–31; Brief at pp. 1 and 6.

Two inquiries must be made. First, the act giving rise to the debt in question must be identified. Was Jennifer Glass' act of driving the car without automobile liability insurance (and Bryan Glass' act of permitting her to drive his car without insurance) the relevant act or was it Jennifer Glass' negligent driving? Second, the Court must determine whether the act, as so interpreted, constituted willful and malicious behavior on the part of the Debtor(s).

### The Debt–Creating Act

In support of her argument that she was injured due to the Debtors' operation of the car without automobile liability insurance, the Plaintiff relied on *In re Whipple,* 138 B.R. 137 (Bankr.S.D.Ga.1991). In *Whipple,* as in this case, the creditor had a prepetition judgment against the debtor for injuries received in an automobile accident. *Id.* at 138. The debtor, who had no liability insurance, subsequently filed for relief under chapter 13 of the Bankruptcy Code. *Id.* In the process

of determining whether the debtor's chapter 13 plan was filed in good faith pursuant to § 1325(a)(3), the court conducted a § 523(a)(6) analysis. *Id.* at 139. The court determined that if the debtor had chosen to proceed under chapter 7, as opposed to chapter 13, the debt arising from the judgment would have been nondischargeable under § 523(a)(6). *Id.* at 139–142. Underlying the court's determination was the conclusion that the debtor's failure to maintain automobile liability insurance caused the plaintiff's injury.

*Whipple*'s reasoning is not persuasive. Though not clear from the opinion, one can logically conclude that the basis for the debtor's liability in *Whipple* was her negligent driving and not her lack of insurance. In fact, the existence, or nonexistence, of insurance would not have been admissible into evidence at the state court trial. *See Dubose v. Ross,* 473 S.E.2d 179, 180 (Ga.Ct.App.1996) ("As a general rule, the fact that a party has liability insurance is not admissible into evidence...."). There is no question that the creditor in *Whipple* was harmed by the debtor's failure to carry automobile liability insurance since that failure inhibited the plaintiff's ability to recover on the judgment. However, this harm was separate from the one which arose from the automobile accident. The *Whipple* court even acknowledged this point when it stated that "the party suffering personal injury suffers another, distinct economic injury as a result of the lack of insurance." *Whipple* 138 B.R. at 141. Moreover, this separate and distinct injury did not even occur until after rendition of the judgment on the first injury—the one which occurred from the automobile accident. Since the debt which the creditor sought to have declared nondischargeable—the judgment—represented compensation for the loss occasioned by the automobile accident, the debt-creating act for purposes of § 523(a)(6) analysis was the negligent driving. Therefore, the court should have addressed whether the debtor's negligent driving was willful and

---

**1.** The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

malicious, not whether the debtor's failure to insure was willful and malicious.

For this reason, we reject the reasoning in *Whipple* and adhere to the majority position. *See Pechar v. Moore*, 98 B.R. 488, 490 (D.Neb.1988) ("The injury which resulted in a debt being created arose from the [debtor's] negligent act of driving, and not the [debtor's] intentional acts of failing to procure insurance...."); *Broussard v. Fields* (*In re Fields*), 203 B.R. 401, 413 (Bankr. M.D.La.1996) (same); *Sparks v. Adams* (*In re Adams*), 147 B.R. 407, 415 (Bankr. W.D.Mich.1992) ("Even though a reasonable person would not drive without insurance, such an *act* does not *result* in an automobile collision."); *Pritchard v. Eberhardt* (*In re Eberhardt*), 92 B.R. 773, 777 (Bankr. E.D.Tenn.1988) (failure to carry insurance did not lead to injuries inflicted during automobile accident); *Austin Mutual Ins. Co. v. Schultz* (*In re Schultz*), 89 B.R. 28, 30 (Bankr.E.D.Wis.1988) (same); *cf. Second National Bank of Saginaw v. Weigandt* (*In re Weigandt*), No. 87–09679 (Bankr.E.D.Mich., October 28, 1988) (see attached), *aff'd mem,* No. 88–CV–10331 (E.D.Mich., January 20, 1989).

■ The Plaintiff's injuries resulted from the collision. Complaint at ¶ 11 ("As a result of [the] collision, Plaintiff suffered grievous and permanent physical, cognitive and emotional injuries."). The collision itself resulted from Jennifer Glass' negligent driving. Complaint at ¶ 10 (The Debtor "negligently rammed the vehicle into another vehicle causing the ... collision."). The inescapable conclusion is that for the debt in question to be nondischargeable under § 523(a)(6), the Debtor's negligent driving must have been willful and malicious. However, the meaning of malice within § 523(a)(6) does not encompass negligent or even reckless conduct. *See Woolner*, 109

B.R. at 254; *see also* cases cited *infra* at 857. As a result, the complaint asserting that Jennifer Glass' negligent driving caused the Plaintiff's injuries does not state a claim for an exception to discharge on account of willful and malicious behavior. Consequently, the debt represented by the judgment is dischargeable.

### Driving Without Insurance Is Not Willful and Malicious Behavior

■ As stated, the Debtors' knowing operation of an uninsured automobile was not the relevant act giving rise to the debt in question. However, even if the Court agreed that this act should be the focus of the § 523(a)(6) analysis, the Plaintiff's argument still fails. An act is not malicious unless harm is "substantially certain" to follow. Mr. Glass' nonfeasance would subject others to economic loss only if his car became involved in an accident. Such an accident is certainly foreseeable—indeed, that is the whole point of purchasing insurance. But of course, it is not inevitable.[2]

Only three cases have held for the creditors' view on this issue, and they were written by only two judges. *See Barnett Bank of Southeast Georgia v. Ussery* (*In re Ussery*), 179 B.R. 737, 742 (Bankr.S.D.Ga.1995) and *Whipple, supra* (Davis, C.J.); and *Moore v. Pechar* (*In re Pechar*), 78 B.R. 568, 570 (Bankr.D.Neb.1987) (Mahoney, J.). Of these three only *Pechar* was appealed and, not surprisingly, the district court there reversed the bankruptcy court for the same reasons which this Court now dismisses the Plaintiff's complaint. *See Pechar,* 98 B.R. 488, 488–90 (plaintiff's injury resulted from debtor's negligent driving, not the debtor's failure to maintain insurance and in any event the fail-

---

2. An "accident" is by definition an unintended event. *See Black's Law Dictionary* 15 (6th ed. 1990) (An automobile accident is defined as "an untoward and unforeseen occurrence in the operation of the automobile...."). Of course, there may be exceptions to the general rule that automobile accidents are unintended. In *Sparks v. Adams* (*In re Adams*), 147 B.R. 407 (Bankr. W.D.Mich.1992), the bankruptcy court concluded

that the debtor's act of speeding and accelerating through a red light at a congested intersection late on a Friday afternoon had such a high probability of resulting in injury that the injury which did result was caused by a willful and malicious act on the debtor's part. 147 B.R. at 416–18. In the matter presently before the Court, the Plaintiff conceded that no such egregious behavior caused the accident in question.

ure to maintain insurance was not willful and malicious).[3]

The majority viewpoint is that the act of driving without liability insurance is not willful and malicious behavior. *See id.; State Farm Ins. Co. v. McConnehea (In re McConnehea)*, 96 B.R. 121, 127 (S.D.Ohio 1988); *Fields*, 203 B.R. at 413; *Choi v. Brown (In re Brown)*, 201 B.R. 411 (Bankr.W.D.Pa.1996); *Rochester Hills Chrysler Plymouth v. Phillips (In re Phillips)*, 153 B.R. 758, 763 (Bankr.E.D.Mich.1993); *Pichardo v. Granda (In re Granda)*, 98 B.R. 598 (Bankr.S.D.Fla. 1989); *Schultz*, 89 B.R. at 30; *Adams*, 147 B.R. at 415 ("[T]he act of driving without Michigan no-fault insurance is not 'willful' pursuant to § 523(a)(6)."); *Basham v. Druen (In re Druen)*, 121 B.R. 509, 512 (Bankr. W.D.Ky.1990) (same); *Myrick v. Ballard (In re Ballard)*, 186 B.R. 297, 299 (Bankr. N.D.Ga.1994) (same); *Beyersdoerfer v. Bex (In re Bex)*, 143 B.R. 835, 836–37 (Bankr. E.D.Ky.1992) (same); *Madden v. Fate (In re Fate)*, 100 B.R. 141, 144 (Bankr.D.Mass.1989) (same).[4]

The minority position has been soundly rejected for good reason. The *Whipple* and

*Ussery* decisions require such a low degree of foreseeability that virtually any act which somehow causes injury could be deemed malicious.[5]

*Ussery*, in particular, highlights the absurdity of this approach. In that case, the creditor held a security interest in an automobile owned by the debtor. *Id.* at 738. Under the security agreement, the debtor was required to maintain comprehensive liability insurance on the automobile naming the creditor as loss-payee. *Id.* Eventually financial difficulties caused the debtor to attempt to sell the car. The debtor then cancelled the automobile insurance. *Id.* To protect the car from possible damage in an accident, the debtor parked the car on his private property with the intent of leaving it there until it was sold. *Id.* Unfortunately, two days after the property damage insurance was cancelled, a tree fell on the car during a severe storm, causing several thousand dollars worth of damage. *Id.* The creditor, which upon repossession had to bear the cost of repairing the car, sought to have the debt arising therefrom declared

---

**3.** Actually, the other two cases have been impliedly overruled. Although neither was directly appealed, the Eleventh Circuit subsequently cut the hearts from both *Whipple* and *Ussery*, in holding that an employer's debt to his injured employee is dischargeable despite the employer's failure to obtain worker's compensation insurance. The court stated that ("... it is clear that Hope's [the employee's] physical injury was not substantially certain to result from Walker's [the employer's] failure to obtain worker's compensation insurance. While Walker's failure to act did result in Hope's lack of coverage *after* the latter's accident, it cannot be said that Walker intended for Hope to suffer a fall or that there was an unbroken chain of events leading from Walker's intentional act to Hope's physical injury.... We conclude that ... Hope's physical injuries were not substantially certain to occur as a result of Walker's failure to act. Accordingly, we AFFIRM the district court's decision to dismiss Hope's claim on summary judgment."). *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165–66 (11th Cir.1995).

**4.** The judge who decided both *Whipple* and *Ussery* explained that "the majority rule" would preclude application of § 523(a)(6) to debts arising from an insurance agent's conversion of premium funds. *Ussery*, 179 B.R. at 742. This argument falls flat because such a debt would almost certainly be nondischargeable for other

reasons. *See* 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4).

**5.** In fact, one could reasonably argue that *Whipple* appears to have been premised on the assumption that the likelihood of harm should be assessed after the fact—i.e., after the accident in question occurs. *See Whipple*, 138 B.R. at 140 ("The party who is injured by an uninsured driver automatically has an impaired ability to recover compensation."); *see also Ussery*, 179 B.R. at 742 (wherein the court expanded on its decision in *Whipple*, holding that the failure to insure "does not 'inevitably' cause a loss, but *if there is an insurable event*, the act of driving without insurance necessarily leads to a separate economic injury." (emphasis added)); *id.* ("When the 'insured' event occurs, this failure to insure inevitably causes financial injury...."). However, both *Whipple* and *Ussery* are confusing in this respect. *See Whipple*, 138 B.R. at 141 ("[I]t is foreseeable that any driver may be involved in an accident and that such an accident may be determined to be the fault of such driver."); *Ussery*, 179 B.R. at 742 (The possibility that a car will be "struck by a falling tree during a storm ... is remote, but foreseeable...."). In balance though, since determining the foreseeability of an event in hindsight would be patently ridiculous— the term itself denotes prospective analysis—the Court will assume that *Whipple* and *Ussery* simply required a really low degree of foreseeability.

nondischargeable pursuant to § 523(a)(6). *Id.* First, the court stated that the debtor intentionally, and thus willfully, canceled the insurance. *Id.* at 739.[6] Defining malicious behavior as behavior that is "wrongful and without just cause or excuse[,]" the court concluded that since the debtor knowingly canceled his insurance in breach of his obligations under the security agreement, thereby increasing the risk of loss to the creditor through the foreseeable, albeit remote, occurrence of an insured event—the falling tree— the debtor's behavior was malicious. *Id.* at 742.

■■■■ The characterization of such behavior as malicious seems absurd. What the court inexplicably omitted from its discussion was the requirement that the act done without just cause or excuse must have been "substantially certain" to cause injury to another. *Woolner,* 109 B.R. at 254; *Transameria Commercial Fin. Corp. v. Littleton (In re Littleton),* 942 F.2d 551, 555 (9th Cir.1991); *Impulsora Del Territorio Sur v. Cecchini (In re Cecchini),* 780 F.2d 1440, 1442–43 (9th Cir.1986) (An act is "malicious" if it is one which is done without just cause or excuse and "which necessarily produces harm."); *Morton v. Kemmerer (In re Kemmerer),* 156

B.R. 806, 808–09 (Bankr.S.D.Ind.1993) ("The requirement that the act necessarily produce harm has been interpreted to mean that the act *is certain or almost certain to cause harm* to the creditor.").[7]

Using *Whipple's* and *Ussery's* approach, just about any mishap could be said to involve malice. Assume, for example, that a golfer accidentally strikes her caddy on the head with her club when teeing off. Obviously, she acted "intentionally" when she swung at the golf ball. And, obviously, in a world where anything that can conceivably happen usually does at some point, the possibility that harm could result from such a swing certainly is remotely foreseeable. However, for purposes of § 523(a)(6), the application of such a low degree of foreseeability, as recognized by the majority position, is untenable. Instead, the relevant question is whether harm to the caddy was substantially certain to occur as a result of the swing. Just as obvious is the fact that the answer to this question is no. Because harm was not substantially certain to result from Mr. Glass' failure to insure, there is no merit to the Plaintiff's contention that this failure was "malicious" for purposes of § 523(a)(6).[8]

**6.** For purposes of this discussion we will assume that the debt-creating act in *Ussery* was the debtor's breach of the security agreement requiring full coverage insurance. Therefore, we need not discuss whether the tree's act of falling on the car was malicious, and if so, whether the actions of the "malicious tree" were vicariously attributable to the debtor.

**7.** For this reason, the same court's statement in *Whipple,* 138 B.R. at 141, that "reckless" conduct is "malicious" is also incorrect. As explained in *Woolner,* there is a continuum of culpable conduct. On one end, if the likelihood of harm from taking the intended action is low, but foreseeable, the act may be called "negligent." Grossly negligent and reckless conduct arise when the likelihood of harm becomes a "strong probability." Toward the other end, when the level of certainty of harm reaches "substantially certain," one has satisfied the element of "malice" under § 523(a)(6). *Woolner,* 109 B.R. at 252–53, nn. 2 and 5; *cf. Jefvert v. Gaylord (In re Gaylord),* No. 94–4007, 1995 WL 376918, at *5 (Bankr.N.D.Ind. June 20, 1995) ("Intentional conduct occurs when the actor either desires to cause the consequences of his act or they are substantially certain to result from it. . . . 'As the probability of harm decreases, the conduct becomes merely negligent.' ") (quoting *Denehy v.*

*Zalowski (In re Zalowski),* 107 B.R. 431, 434 (Bankr.D.Mass.1989)).

**8.** Analytically identical to the issue now before the Court is the situation where a creditor/employee injured on the job is unable to obtain compensation for such injuries due to the debtor/employer's failure to maintain legally required worker's compensation insurance. Similar to the Court's conclusions here, the majority of courts have found that such debts are not nondischargeable pursuant to § 523(a)(6) because the actual injury was not caused by the debtor's failure to maintain insurance. *See LaBonte v. Hall (In re Hall),* 194 B.R. 580, 582 (W.D.Mich. 1996) ("[T]he debtor's willful failure to buy worker's compensation insurance did not necessarily cause injury to appellant."); *Gaylord,* at *3–4 (compiling and citing with approval those cases representing the majority opinion); *Parker v. Grzywacz (In re Grzywacz),* 182 B.R. 176, 178 (Bankr.E.D.Mich.1995) (The defendant's "failure to maintain workers' compensation insurance" is not actionable because the act must *"necessarily* lead to the plaintiff's injury. A mere possibility of economic injury in the event of a work-related injury does not satisfy the test. . . .").

In an unpublished opinion, this Court previously addressed the issue of whether knowingly operating an automobile without property damage insurance constitutes willful and malicious behavior. *Weigandt, supra.* The facts of *Weigandt* are similar to those in *Ussery.* The debtor was party to a security agreement that required him to maintain collision insurance on a pickup truck. After canceling the insurance, the debtor was involved in a few minor traffic accidents. Eventually, the plaintiff repossessed the truck. Due to the existence of small dents and rust damage from the accidents, the plaintiff obtained less on resale than it otherwise would have. Subsequently, the plaintiff sought to have its debt declared nondischargeable pursuant to § 523(a)(6) based on the fact that the debtor had canceled his insurance in violation of the security agreement. This Court first held that the debtor's breach of the security agreement—failing to maintain insurance—was not the debt-creating act. We further concluded that even if such behavior were the debt-creating act, a breach of contract, even an intentional one, does not amount to willful and malicious behavior. *See also LSI Financial Group v. Perry (In re Perry)*, 166 B.R. 319, 321 (Bankr.M.D.Tenn.1994) (injury to secured creditor resulting from debtor's failure to renew automobile insurance was not willful and malicious).

Attempting to distinguish *Weigandt*, the Plaintiff argued that the Debtors' failure to maintain automobile liability insurance here was an illegal act in contravention of Michigan law, whereas the *Weigandt* debtor's failure to maintain property damage insurance was a breach of contract not proscribed by state law. Because the actions of these Debtors' were illegal, the Plaintiff argued, they must also be considered malicious. Brief and Reply to Show Cause Order at 6.

■ However, the mere fact that an act is illegal does not necessarily mean it is malicious. This is the case even if the act is not only illegal but criminal. For instance, intentionally passing an insufficient funds check is a crime. *See, e.g.,* Mich.Comp.Laws § 750.131. Nonetheless, courts addressing the issue have generally held that the act of passing the check is not, by itself, malicious. Instead, they have focused on the debtor's intent when passing the check. *See, e.g., Buckeye Candy Co. v. Ritzer (In re Ritzer)*, 105 B.R. 424, 429–30 (Bankr.S.D.Ohio 1989); *Western Petroleum Co. v. Burgstaler (In re Burgstaler)*, 58 B.R. 508, 515 (Bankr.D.Minn. 1986).

In Michigan, employers are legally required to maintain worker compensation insurance. Mich.Comp.Laws § 418.611. An employer who fails to comply with this requirement is guilty of a misdemeanor. Mich. Comp.Laws § 418.641. As noted *supra* at note 8, however, the majority of courts have found that such noncompliance does not by itself give rise to a nondischargeable debt for willful and malicious injury.

Until fairly recently, driving an automobile at an excessive rate of speed was a crime in Michigan. Mich.Comp.Laws § 257.628, *amended by* 1978 Mich.Pub.Acts No. 510, § 1 (amendment replaced "guilty of a misdemeanor" with "responsible for a civil infraction"). And while speeding has been decriminalized, it is still illegal. Mich.Comp.Laws § 257.628. However, the Plaintiff has not cited, nor has this Court found, any cases withstanding appeal where the act of speeding, without more, was characterized as malicious behavior.

The district court in *Oregon Ford v. Claburn*, 89 B.R. 629 (N.D.Ohio 1987) had it right. The district court reversed a bankruptcy court's unusual holding that all illegal acts were *per se* malicious.[9] The bankruptcy court concluded that since speeding is illegal in Ohio, an injury arising from an accident caused by the debtor's speeding was necessarily willful and malicious. *Id.* at 630. The district court explained that the history and

---

9. Not surprisingly, the bankruptcy court's holding in *Claburn* was shared by the court in *Whipple*, 138 B.R. at 141 ("[T]his court considers the disregard for the statutory duty to insure in violation of the public policy of this state to be malice *per se.*"). Query: Must the violation of public policy be codified before it is *per se* malicious? Is every violation of statutory law malicious? Doesn't the Uniform Commercial Code itself impose "statutory" duties? Is every violation of the Uniform Commercial Code *per se* malicious? Obviously, the notion is untenable.

development of § 523(a)(6) did not support such a concept. *Id.* at 631. According to the district court, the adoption of such an approach would lead to illogical and inappropriate results. *Id.; see also, LaBonte v. Hall (In re Hall )*, 194 B.R. 580, 582–83 (Bankr. W.D.Mich.1996) (quoting approvingly from *Jefvert v. Gaylord (In re Gaylord )*, No. 94–4007, 1995 WL 376918, at *5 (Bankr.N.D.Ind. June 20, 1995) that acts such as speeding, though usually intentional and wrongful, were not intended to come within the scope of § 523(a)(6) and that so holding would lead bankruptcy courts down a slippery slope where eventually even mere negligent behavior would be classified as malicious).

Until 1978, Michigan also classified careless and negligent driving as a crime punishable by not more than 10 days in the county jail. Mich.Comp.Laws § 257.626b, *amended by* 1978 Mich.Pub.Acts, No. 510, § 1. The amendment reduced careless or negligent driving from a misdemeanor to a civil infraction. Thus, careless or negligent driving, while now viewed with less severity, is still an illegal act. Mich.Comp.Laws § 257.626b. Nonetheless, bankruptcy cases have consistently held that careless or negligent behavior does not rise (fall?) to the level of maliciousness. *Geiger v. Kawaauhau (In re Geiger)*, 93 F.3d 443, 444 (8th Cir.1996) ("conduct that is merely reckless is not malicious within the statute"); *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986) (harm resulting from mere reckless conduct "is not a willful and malicious injury for purposes of § 523(a)(6)"); *Greenfield v. Tuccillo*, 129 F.2d 854, 856 (2d Cir.1942) (debtor's state court conviction for operating automobile in negligent manner was "not conclusive proof that he had incurred civil liability to the . . . creditor for willful and malicious injuries"); *Zdarzynski v. Wegner (In re Wegner)*, 88 F.2d 899, 901–02 (7th Cir.1937) ("Willful or intentional injury implies positive and aggressive conduct, and not mere . . . [negligence] . . . ."); *Bethesda Hospital v. Kessnick (In re Kessnick )*, 174 B.R. 481, 485 (S.D.Ohio 1994) ("[T]he term[ ] 'malicious' does not incorporate negligent or reckless conduct."); *Woolner*, 109 B.R. at 254 (same). Other examples where illegal behavior has not been considered willful and malicious include the following: *Clair v. Oakes (In re Oakes)*, 24 B.R. 766, 769 (Bankr.N.D.Ohio 1982) (without further evidence, vehicular homicide conviction was not sufficient to prove debtor willfully and maliciously caused injury); *Johnson v. Kriger (In re Kriger)*, 2 B.R. 19, 25 (Bankr. D.Ore.1979) ("Violation of a brake-safety statute alone will not constitute willful and malicious conduct.").

A final example can be found in pre–1984 bankruptcy cases. At that time, there was a serious question whether a tort liability incurred by a debtor while driving intoxicated came within § 523(a)(6). *Collier on Bankruptcy, supra,* ¶ 523.12. Although drunk driving was and is a crime, courts were split as to whether injuries caused by driving in such a condition were willful and malicious. *Id.* The majority (and better) view was that the injuries were not caused willfully and maliciously since driving intoxicated was not substantially certain to result in harm. *Id.* With the Bankruptcy Amendments and Federal Judgeship Act of 1984, Congress enacted § 523(a)(9), which excepts from discharge all debts arising from death or personal injury caused by a debtor's operation of a vehicle while intoxicated. 11 U.S.C. § 523(a)(9); *see Young v. Rose (In re Rose)*, 86 B.R. 86 (Bankr.E.D.Mich.1988). Obviously, if the mere illegality of an action were sufficient to deem it willful and malicious, the enactment of § 523(a)(9) would not have been necessary because § 523(a)(6) would have been adequate to render liabilities arising from drunk driving nondischargeable. From the above examples, it is clear an act is not "malicious" for purposes of § 523(a)(6) merely because it may have been illegal.

 Bankruptcy's "fresh start" policy dictates that a court's determination on nondischargeability be tempered by the maxim that "exceptions to discharge should be literally and strictly construed against the creditor and liberally in favor of the debtor." *Borg–Warner Acceptance Corp. v. Watkins (In re Watkins)*, 90 B.R. 848, 856 (Bankr. E.D.Mich.1988) (citations omitted); *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Manufacturer's Hanover Trust Co. v. Ward (In re Ward )*, 857 F.2d 1082, 1083 (6th Cir.1988); *see also Kem-*

*merer,* 156 B.R. at 808 (Section 523(a)(6) "is to be narrowly construed to effectuate the congressional policy of permitting debtors a fresh start through bankruptcy."). The maxim serves to restrain a court from accepting novel appeals to broaden the scope of the statute's plain language. *Watkins,* 90 B.R. at 856.

■ To reiterate, willful and malicious conduct is behavior by the debtor that is an act done intentionally or deliberately, which is substantially certain to result in harm to another, and is done without just cause or excuse. If these elements are interpreted too broadly, bankruptcy's fresh start policy could be inhibited. For the reasons stated, we are in agreement with those courts that have refused to adopt a more elastic interpretation of willful and malicious behavior than history and Congressional intent permit.

■ To the Plaintiff, the result may seem unfair or unjust, particularly in light of the fact that bankruptcy courts are courts of equity. *See Granfinanciera v. Nordberg,* 492 U.S. 33, 57, 109 S.Ct. 2782, 2798–99, 106 L.Ed.2d 26 (1989) (noting traditional rule that bankruptcy courts are courts of equity). However, equity will not permit a bankruptcy court to go beyond the permissible scope of the Bankruptcy Code, which is what this Court would have to do to grant the relief requested. *See United States v. Noland,* —— U.S. ——, ——, 116 S.Ct. 1524, 1526, 134 L.Ed.2d 748 (1996) (noting that there are limits to the equitable reach of a bankruptcy court); *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). That Congress may not have provided a remedy for every perceived wrong is no license to courts to fashion their own. Resort must be to Congress.

The fact that Congress has so frequently responded to such perceived omissions is a testament to the political process. For example, § 523(a)(2)(C), originally added as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 and later amended by the Bankruptcy Reform Act of 1994, creates a presumption that certain consumer debts and cash advances incurred within 60 days of the filing of a bankruptcy petition and exceeding $1,000 in amount are nondischargeable. 11 U.S.C. § 523(a)(2)(C). Section 523(a)(5) has been amended several times in an attempt to ensure that debts "to a spouse, former spouse, or child of the debtor ... [in the nature of] ... alimony[,] ... maintenance ... or support" are not dischargeable. 11 U.S.C. § 523(a)(5). As noted above, Congress enacted § 523(a)(9) in 1984 to prevent injuries caused by a debtor while driving intoxicated from being discharged. 11 U.S.C. § 523(a)(9). In response to the savings and loan debacle, Congress added § 523(a)(11) in 1990 to make nondischargeable debts arising from fraudulent acts of the debtor that are committed while the debtor is serving in a fiduciary capacity to a bank or other depository institution. 11 U.S.C. § 523(a)(11). In 1994, Congress added § 523(a)(15) to make conditionally nondischargeable marital debts not in the nature of child or spousal support.

More than likely, these amendments would not have occurred were it not for some interest group pressuring Congress to make the change. Many other examples could be provided. Even now there are efforts to legislatively broaden the exception to discharge for injuries resulting from drunk vehicle drivers to include drunk boat operators and drunk airplane pilots. *See* H.R. 764 and H.R. 120, 105th Cong. (1997). However, the point is that the legislative branch is the place to go if current law is perceived to be inadequate. Courts, on the other hand, cannot legislatively fix society's ills.[10]

---

10. Actually, the problem stems not from the Bankruptcy Code, but from Michigan's own inadequate legislation and enforcement. Although driving without automobile liability insurance is against the law in Michigan, Mich.Comp.Laws § 500.3101(1), it is a toothless law. As a result, the Court is too often confronted with creditors/victims who are unable to obtain just compensation for their injuries. The ability to remedy this inequitable situation resides, not with the bankruptcy courts, but with the State. Were the State to act, it could help prevent repetition or at

Accordingly, the Plaintiff's Complaint seeking to have the Judgment against the Debtor declared nondischargeable fails to state a claim upon which relief can be granted and **IS HEREBY DISMISSED** pursuant to F.R.Bankr.P. 7012. An order consistent with this Opinion will be entered.

ATTACHMENT

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF MICHIGAN NORTHERN DIVISION

In re: DEAN WEIGANDT, Debtor.

Case No. 87–09679.

A.P. No. 87–9134.

SECOND NATIONAL BANK OF SAGINAW, Plaintiff,

v.

DEAN WEIGANDT, Defendant.

Oct. 28, 1988.

MICHAEL M. HALL, Attorney for Plaintiff.

FRANK R. VARGAS, Saginaw, MI, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARTHUR J. SPECTOR, Bankruptcy Judge.

This case has been submitted on stipulated facts, which the Court finds to be as follows:

1. The defendant borrowed money from the plaintiff on May 9, 1984 and gave as collateral a security interest on a 1983 GMC S–15 Pickup Truck.

2. At the time of the bankruptcy, the pickup truck had been repossessed and sold by the plaintiff, resulting in a $2,983.09 deficiency.

3. During the time that the defendant had possession of the truck, he was involved in several small accidents causing dents and rust damage to the truck, which damage caused the plaintiff to obtain less for the resale of the truck than it otherwise would have.

4. Defendant cancelled his collision insurance on the truck before the small accidents referred to above had occurred and so there was no reimbursement by any insurer for any of the damages caused to the truck.

5. The defendant knew that the contract with the plaintiff required him to keep the truck insured against collision damages at the time he cancelled the insurance.

### CONCLUSIONS OF LAW

1. The Court has jurisdiction over this cause of action pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

2. Although the defendant intentionally cancelled the insurance, he did not intentionally injure any property interest of the plaintiff.

3. The defendant's cancellation of the insurance was not malicious.

4. The plaintiff has not established a cause of action pursuant to § 523(a)(6) since the failure to maintain collision insurance did not itself injure any property.

### DISCUSSION

The Court has read the briefs of both parties. It appears that the only cases arguably on point are In re Pechar, 16 B.C.D. 688, 78 B.R. 568 (Bankr.D.Neb.1987) and In re Scott, 5 C.B.C.2d 95, 13 B.R. 25 (Bankr. C.D.Ill.1981). Pechar is wrongly decided. Even if correctly decided, it is not solid precedent for this case since it involved a statutory requirement intentionally disobeyed by the defendant. That case involved the defendant's failure to maintain mandatory personal liability insurance. Here, the gravamen of the case is that the debtor failed to maintain

least lessen the frequency of occasions where victims of automobile accidents are left injured (or worse) and unable to recover just compensation due to the tortfeasor's lack of mandatory insurance. Better that such situations be avoided than that the bankruptcy law make such debts nondischargeable after the fact.

collision insurance, which is not a statutory requirement of the State of Michigan, but exists only within the contract between the parties. It is well known that a breach of contract, even if intentional, does not rise to the standard of willful and malicious injury. *In re Haynes*, 19 B.R. 849 (Bankr.E.D.Mich. 1982).

Even if theoretically the plaintiff's cause of action makes sense, (which it does not), it is quite apparent that the mere act of cancelling insurance has no practical effect upon the plaintiff in most circumstances. First of all, the plaintiff could have cancelled his insurance the day after he obtained it and never have had any accidents whatsoever. Under such circumstances, obviously, the act of cancellation would have absolutely no effect on the value of the car and plaintiff would have nothing to complain about. Furthermore, even if the defendant had maintained collision insurance, each accident might have been so minor as to have not warranted submission of a claim. Furthermore, the defendant could have decided not to repair the damage accidentally caused either due to a lack of funds, or because the truck still ran fine and he was not concerned about minor blemishes in appearance. Under those circumstances, the plaintiff still would have received a damaged truck without reimbursement for insurance. There is no requirement of law that I am aware of which makes it mandatory for a truck owner to have each dent repaired as it occurs.

*In re Scott* is correctly decided and is authority for the defendant's proposition that a defendant's intentional failure to maintain insurance is not an act which can, on circumstances like these, result in a determination of nondischargeability under § 523(a)(6).

In summary, so long as the plaintiff cannot show (and has not even alleged) that the defendant purposely caused any damage to the truck, the plaintiff has not established a cause of action under § 523(a)(6) of the Bankruptcy Code. Accordingly, judgment will enter in favor of the defendant and against the plaintiff and defendant may have his costs taxed.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN NORTHERN DIVISION

SECOND NATIONAL BANK OF SAGINAW, Plaintiff– Creditor,

v.

Dean WEIGANDT, Defendant–Debtor.

File No. 88–CV–10331–BC.

Jan. 20, 1989.

*ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT*

CHURCHILL, District Judge.

Section 523(a) of the Bankruptcy Code lists several exceptions to discharge, including debts for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6); *see also Perkins v. Scharffe*, 817 F.2d 392, 394 (6th Cir.), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987) (defining a willful act as a "deliberate and intentional act which necessarily leads to injury"); *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986) (stating that "malicious" means "in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm.").

For reasons stated on the record, the Court finds that defendant's failure to maintain collision insurance was *not* a "willful and malicious" injury to the bank's property. Accordingly, IT IS ORDERED THAT the judgment of the bankruptcy court be, and hereby is, *affirmed. See also In re Eberhardt*, 92 B.R. 773 (Bankr.E.D.Tenn.1988); *In re Schultz*, 89 B.R. 28 (Bankr.E.D.Wis. 1988); *In re Bafford*, 61 B.R. 631 (Bankr. W.D.Tenn.1985); *In re Barriger*, 61 B.R. 506 (Bankr.W.D.Tenn.1986) (reaching similar conclusion).

**So ordered.**